## WHITT *et al. v.* BLOUNT.

1. Although the name "Artope & Whitt Company," standing alone, would import a corporation, where it is designated in a plea as "a business known as the Artope & Whitt Company and owned by" the defendants, and is repeatedly referred to in the plea as the business of the defendants, such name will be construed as a mere trade name under which the defendants are conducting their business.

2. "The free assent of the parties being essential to a valid contract, duress . . by threats or other arts, by which the free will of the party is restrained, and his consent induced, will void the contract." The plea in the present case was a good plea of duress.

3. The pleas of want of consideration and failure of consideration in this case were improperly stricken.

4. A plea of recoupment being a cross-action by the defendant against the plaintiff, its allegations as to damages must be as specific and certain as if made in a petition.

Submitted December 1, 1905.—Decided January 12, 1906.

Complaint. Before Judge Hodges. City court of Macon. June 19, 1905.

A. S. Blount sued D. S. Whitt and G. E. Artope on three promissory notes given by the defendants to the plaintiffs, dated October 10, 1903, aggregating $500, and due respectively two, four, and six months after date. The defendants filed the following plea: In 1903 defendants entered into a contract with plaintiff, "in which he agreed to work for a business known as the Artope & Whitt Company and owned by them." Under this contract he was given control and management of their marble yard at Rocky Mount, North Carolina, and all of the business connected with it in the

States of Virginia, North Carolina, and South Carolina. In 1904 the plaintiff, "contrary to his duties to defendants, and contrary to the law and good morals, got the affairs of said business and said marble-yard business [so] thoroughly in his control as that no one else understood the same nor could manage the same. Thus he brought about such a state of affairs that defendants could not do without him except at great financial loss to themselves. Following out his plan, he refused to carry out his contract with defendants and threatened immediately to quit their employment unless they would submit to certain new and unjust demands," to .wit, the giving of the note sued on and "the payment of a certain sum of money." Moreover he threatened "to leave and take with him certain property, and to retain funds amounting to $847.36," which he had collected for defendants. "In addition to this [plaintiff] had and controlled numerous writings, contracts, et cetera, for work to be erected, amounting to thousands of dollars, and had it in his power to collect large sums for work which he had done and controlled, and which he alone could collect with facility and without great loss to defendants." Plaintiff, "being insolvent and understanding the power he had to coerce defendants, forced them into signing 'said notes, he agreeing as a part of the consideration therefor to continue on in their service for the year, and especially to carry out the contracts which he had obtained, and to collect the outstanding debts due them, and to do all other things in his power usual in such circumstances to carry on the business of defendants. After coercing defendants to pay him the sum of money and give him the notes as above stated upon the consideration of his agreement to serve them for the year and collect the monies due them and save them the losses above referred to, [plaintiff] . . in ,a week or two thereafter and before the said year was out, contrary to said contract, did quit the service of defendants, and by so doing caused them to lose large sums of money aggregating one thousand dollars or other large sum, an itemized list of same being hereto attached, marked Exhibit 'A.' Wherefore, the premises considered, defendants plead that said notes were obtained by fraud and duress, and were without consideration, and that the consideration for same has failed. They also pray that they may be allowed to recoup the said damages in the sum of $1,000 against said plaintiff, and that they may have judgment for same." No exhibit or itemized state-

ment of damages suffered by defendants was annexed to the plea. The plaintiff demurred to this plea, on the grounds, (1) that the contract set out therein appears to have been made between the plaintiff and the Artope & Whitt Company, presumably a corporation and a third party, and the breach thereof can not be pleaded in defense to the action against defendants as individuals; (2) that the allegations do not make a case of fraud or duress; (3) that no cause of action is set out against plaintiff to enable defendants to recoup against him, and no bill of particulars is attached to the plea; (4) that the terms of the contract which plaintiff is alleged to have broken are not stated; and (5) that the plea admits the execution of the notes sued on and sets forth no valid defense to a suit on them. The court sustained the demurrer generally and struck the plea, and, there being no issuable defense filed under oath, rendered judgment against the defendants. They excepted.

*A. L. Dasher,* for plaintiffs in error. *B. J. Dasher,* contra.

CANDLER, J. 1. The name "Artope & Whitt Company," without more, would import a corporation; but when it is designated in the plea as "a business known as the Artope & Whitt Company and owned by" defendants, and is considered in connection with all the other allegations of the plea relating thereto, it clearly appears that it was not a corporation, but a mere trade name under which defendants were conducting their business.

2. The Civil Code, § 3536, declares: "Duress consists in any illegal imprisonment or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another and actually inducing him to do an act contrary to his free will." The language of section 3670 is: "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other arts, by which the free will of the party is restrained and his consent induced will void the contract. Legal imprisonment, if not used for illegal purposes, is not duress." The provisions of these sections essentially modify the strictly defined doctrine of duress at common law. Under that doctrine duress was divided into two classes, viz.: 1, by imprisonment; that is, when a person is actually imprisoned, (*a*) for an improper purpose without just cause, (*b*) for a just cause without lawful authority, or (*c*) for a just cause and under proper author-

43

ity, but for an improper purpose; and, 2, per minas, when a person (*a*) is threatened with loss of life, (*b*) is threatened with loss of limb, (*c*) is threatened with mayhem, or (*d*) is threatened with imprisonment. Accordingly the English decisions, as well as a number of cases in the United States, adhering to the common-law doctrine, hold that a threat to destroy, injure, or detain goods or chattels does not constitute such legal duress as to be ground for setting aside a contract made under its influence. 9 Cyc. 444 et seq. Duress consists not merely in the act of imprisonment or other hardship to which the party is subjected, but the state of mind produced by those circumstances, and in which the act sought to be avoided was done. Ib. 443. An essential element of a contract in the true sense, that is, as distinguished from quasi or constructive contracts, is an agreement or mutual assent of the parties; and as stated in the Civil Code, §3670, this assent, in order to make the contract valid, must be free, that section declaring that duress, not only of imprisonment or by threats, but by "other arts, by which the free will of the party is restrained, and his consent induced, will void the contract." The language of section 3536, defining duress, is equally broad, since it declares that duress consists not only in any illegal imprisonment, or legal imprisonment for an illegal purpose, or threats of bodily or other harm, but also, of *other means amounting to coercion or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will.* According to the weight of modern authority, the unlawful detention of another's goods under oppressive circumstances, or their threatened detention, will avoid a contract on the ground of duress, for the reason that in such cases there is nothing but the form of agreement, without its substance. Clark on Contracts, §143; 9 Cyc. 451. "Where the parties are not at arms' length, but one of them is in a position to dictate, the courts will treat agreements which are influenced by threats of injury to or withholding of property as made under duress; as, for example, where a common carrier refuses to deliver or transport freight already in his possession, unless the shipper will sign a separate contract; where illegal charges are exacted by a customs officer as a condition of the delivery of property; where a banker refuses to honor a customer's check unless he accedes to a false and fraudulent claim; where one with the necessary power threatens to prevent the clearance of a vessel; where a

gas or water company refuses to furnish gas until a promise which it has no right to exact is made; where a state institution refuses to admit a student unless a payment of an illegal fee is made by him." 9 Cyc. 452, and cases cited. · See also Clark on Contracts (2d ed.), 243, and cases cited in note 206.

As we have seen, the plea in the present case alleges, in substance, that the defendants, the year before the notes were given, had placed plaintiff in control of their business in North Carolina, which extended also into the States of South Carolina and Virginia; that he had a thorough knowledge and control of such business; that he had entered into numerous contracts involving large sums of money, for the execution of work pertaining to the business; that he had collected and had in his possession nearly $850 in money belonging to the defendants; that he also had control of numerous writings, contracts, and other property relating to the business; that under the circumstances no one but plaintiff could carry on the business except at great financial loss to defendants; that the plaintiff had brought about this state of affairs in pursuance of a preconceived plan to coerce the defendants into giving him the notes; that he was insolvent; that he threatened to leave the employment of the defendants and take with him their money, contracts, and other property unless they gave him the notes and paid him a certain sum of money; and that, fearing he would carry out such threats to their great financial loss, they gave him the notes. We are of the opinion that the plea, while not coming up to the requirements of technical accuracy, was in substance a good plea of duress, and that the court erred in striking it.

3. If the notes were given under duress, they were void. And if the plaintiff agreed to continue in the employment of the defendants for the rest of the year in which the notes were executed and to do for the defendants the things set out in the plea, and he, without fault on defendants' part, failed to comply with his agreement, there was to that extent a failure of consideration.

4: The plea failed to set out in the body thereof, or in an exhibit attached thereto, any specific damages which defendants suffered by reason of the plaintiff's alleged breach of his agreements. It was therefore not a good plea of recoupment, and was subject to the special demurrer. *Atlanta Glass. Co.* v. *Noizet*, 88 *Ga.* 44.

*Judgment reversed.* · *All the Justices concur.*