## FENWICK SHIPPING COMPANY v. CLARKE BROTHERS.

1. Money extorted under duress to discharge a claim unfounded in law or fact, and known to the payee to be unfounded, may be recovered at law upon proper proceedings instituted therefor.
2. It appearing that the payment of the money referred to in the preceding headnote was made by James K. Clarke, as a member of the firm of Clarke Brothers, to prevent a levy and threatened seizure of his baggage under oppressive circumstances, the purpose of the proceeding being the collection of an unfounded money demand, an error in the Christian name and initials of Clarke in the writ issued in pursuance of a threat made to levy upon his baggage was immaterial, inasmuch as James K. Clarke was the party proceeded against under the writ and understood that the issuance of this writ was a preliminary step in the proceeding to seize and detain his baggage.
3. The court did not err in refusing to dismiss the levy of the attachment upon the ground that the levy was excessive.
4. The court did not err in refusing to sustain the plea described as a plea of res adjudicata, filed in this case.

Argued January 16,—Decided July 1, 1909.

Attachment. Before Judge Seabrook. McIntosh superior court. August 15, 1908.

Cited on payment under duress: *Ga. R.* 126/717; 123/655; 122/812; 115/864; 111/412; 94/672; 90/698; 81 N. W. 494; 114 Mass. 364 (19 Am. R. 368) ; 68 Mich. 263 (13 Am. St. R. 339) ; 10 Am. & Eng. Enc. L. (2d ed.) 328.

*C. M. Tyson,* for plaintiff in error. *W. L. Clay,* contra.

BECK, J. Under the provisions of a charter party entered into between the parties in this case, Clarke Brothers, the charterers, were to advance to the master of the Steamship "Burbobank," whenever required by him, a sufficient sum of money to meet the steamer's ordinary disbursements at the port of loading, and the amount so advanced was to be subject to a commission charge of 2½ per cent. Pursuant to this provision, Clarke Brothers advanced the sum of $7,436.50 at the port of Darien, Ga., and the master paid them therefor the prescribed commission of 2½ per cent., amounting to $185.91. Subsequently James K. Clarke Jr., one of the members of the firm of Clarke Brothers, was in Liverpool, England; and while there one Esplin, an agent of Fenwick Shipping Company Limited, owner of the Steamship "Burbobank," demanded of him a return of the commission paid at Darien, and, upon his refusing to return the money, threatened to levy on his baggage. A few days later summons issued and was served upon

Clarke personally, though under the wrong initials, directing him to answer the suit of Fenwick Shipping Co. eight days after service. Clarke instructed his Liverpool agents to pay the amount, and left Liverpool several days before the summons was to be answered. Subsequently the Steamship "Burbobank" entered the port of Darien, and was attached by Clarke Brothers, who brought suit to' recover from Fenwick Shipping Co. the amount paid them by Clarke while in Liverpool, which they claim was paid under duress. Clarke testified, that, in addition to the threats made to him personally in regard to levying on his baggage, he was advised by his agents in Liverpool that he might naturally expect such levy to be made, and that he would be detained in Liverpool for a considerable time if he undertook to defend the suit. The jury returned a verdict in favor of Clarke Brothers; and the trial judge refusing to grant a new trial, the defendant excepted. The other facts necessary to an understanding of the decision of the court are hereinafter stated.

1. The Civil Code, § 3536, declares: "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." And the language of § 3723 of the Civil Code is: "Payment of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." These two sections should be construed together in passing upon the question as to whether or not any payment by one to another of a claim for money, which is unfounded, may be recovered back as having been paid under duress.

A consideration of the decisions of this court, involving the question as to what acts would constitute duress, makes it evident that the significance of the term "duress" has a very much broader scope than it had at common law and under the decisions of the courts which have followed or closely adhered to the principles of

the common law. Under the decisions of this court, which are in harmony with the general trend of modern authority, the unlawful detention of another's goods under oppressive circumstances, or their threatened detention, would avoid a contract on the ground of duress, for the reason that in such cases there is nothing but the form of agreement without its substance. *Whitt* v. *Blount,* 124 *Ga.* 671 (53 S. E. 205), citing Clark on Contracts, § 143; 9 Cyc. 451. "Where the parties are not at arms' length, but one of them is in a position to dictate, the courts will treat agreements which are influenced by threats of injury to or withholding property as made under duress; as, for example, where a common carrier refuses to deliver or transport freight already in his possession, unless the shipper will sign a separate contract; where illegal charges are exacted by a customs officer as a condition of the delivery of the property; where a banker refuses to honor a customer's check unless he accedes to a false and fraudulent claim; where one with the necessary power threatens to prevent the clearance of a vessel; where a gas or water company refuses to furnish gas until a promise which it has no right to exact is made; where a State institution refuses to admit a student unless a payment of an illegal fee is made by him." 9 Cyc. 452, and cases cited. If the testimony of James K. Clarke Jr., who appears in this case as a witness for the plaintiffs, presents the truth of the case (and the jury had the right to so receive it), the payment by him of the sum of $185.91 to Esplin, the agent of Fenwick Shipping Company Limited, was made to prevent an immediate seizure of property under circumstances that were oppressive in their character. According to Clarke's testimony, Esplin, in a harsh and menacing manner, threatened to attach and levy upon the baggage of the witness, who was then in England and on his way to complete an itinerary laid out for important business purposes, and which included Genoa, Marseilles, Nancy, Brussels, Antwerp, Havre, and a number of other European cities, where the traveler had engagements fixed in advance, which engagements it was important that he should keep, they being of a business character and involving interests of importance. Under these circumstances a threatened seizure of the traveler's person could hardly have had a stronger coercive influence, tending to secure compliance with the unfounded claims of the shipping company, than the threatened seizure of the baggage

of the traveler. Taking Clarke's testimony as the truth, the jury might, from that evidence and the deductions which could be drawn from it, find that the claim which the agent of the plaintiff in error was seeking to collect was not only unjust in fact, and without any foundation whatever in law, but that this was known to Esplin and the plaintiff in error, and that they were seeking, under the guise of legal proceedings, to force the payment of a sum of money which they knew was not due them, and that in order to compel the payment of this money they were taking advantage of Clarke's peculiar situation, knowing that if his baggage were seized and held, his journey, undertaken for business purposes, would be interrupted, and that Clarke was a stranger and in a foreign country and would be greatly embarrassed by the threatened procedure,—Clarke testifying that he was advised and was under the impression that a seizure of his baggage was the necessary consequence of the writ which was served upon him, and that the payment of the claim was necessary in order to avoid such a seizure. The jury could have taken into consideration also the fact that Esplin was informed by Clarke and Clarke's agents that the latter had funds belonging to Clarke Brothers in their hands, sufficient to meet the demands which the Fenwick Shipping Company had or pretended to have against them. This testimony of Clarke was uncontroverted. The plaintiffs in error had opportunity to introduce evidence to explain their conduct, and to show that in good faith they were prosecuting a bona fide claim for money due them when they threatened to levy upon Clarke's property; but they introduced no testimony whatever, and the jury were left to decide as to the motives with which the agent of the shipping company acted, and as to whether Clarke was under duress at the time of the payment of the sum demanded of him, under the evidence introduced by Clarke Brothers, and under the charge of the court. The plaintiffs in error do not complain of the charge of the court below in submitting this issue to the jury; and from an inspection of the charge, which was made a part of the record, it appears that the court did submit to the jury the question as to whether "the plaintiff in that case [Fenwick Shipping Co.], fraudulently and knowing that it had no just claim against him [Clarke], threatened to seize his baggage for the purpose of extorting money from him; [and] it would be for you to

determine, if the payment by Mr. Clarke was done to prevent the
seizure of his baggage—whether it was voluntary or by compul-
sion; if not done voluntarily, if done for the purpose of preventing
an unlawful and unwarranted and unjustifiable seizure of his bag-
gage, it should be recovered back by him, otherwise it should not
be." Under such instructions the jury found the issue, thus
presented, against the plaintiff in error; and we are of the opinion
that there was sufficient evidence to warrant their finding.

2. The fact that the writ issued from the English court,
and the issuance of which was one of the steps taken by Esplin,
the agent of the shipping company, preliminary to a levy on the
baggage of James K. Clarke, was directed to "H. J. Clarke" in-
stead of to "James K. Clarke," is immaterial; inasmuch as it is
clear beyond question that the issuance of the writ was in pur-
suance of the threat made by Esplin to levy upon James K.
Clarke's property, and was intended to bring about a payment by
James K. Clarke, as a member of the firm of Clarke Brothers,
of the sum of $185.91, the amount which had formerly been paid
to Clarke Brothers as a commission according to the terms of the
charter party; Clarke himself testifying that the money was paid
to Esplin for Clarke Brothers; and it is inferable from the evi-
dence in the case that the payment made to Esplin was made with
partnership funds.

3. In another ground of the motion for a new trial error is
assigned upon the refusal of the court to sustain a motion made
by defendant's counsel to dismiss the levy made upon the steam-
ship, "her machinery, tackle, apparel, and furniture," defendant
contending that said property was worth $75,000 to $100,000, while
the levy was for $185.91, and interest from September 17, 1903;
and that the machinery, apparel, tackle, and furniture could have
been levied upon to satisfy the attachment, without levying upon
the steamship; or, if the steamship was levied upon, then the levy
should not have included the machinery, apparel, furniture, and
tackle. Without discussing whether a motion to dismiss was a
proper proceeding, because there may have been evidence indicating
excessiveness of levy, there was no error in overruling this ground
of the motion for new trial. So far as appears from the record,
at the time of making this motion the court was not in possession
of facts showing that the property levied upon was of the alleged

value, beyond the mere recital in the motion itself, and such recitals were not evidence establishing the truth of the allegations in the motion. Nor could the court take judicial cognizance of the fact that the furniture of the ship was equal in value to the amount necessary to satisfy the attachment. The only thing in the record to indicate that this motion to dismiss the levy was made after the introduction of the testimony is a recital in the brief of evidence following the brief of the oral testimony, in the following language: "Counsel for defendant moves the court to dismiss said case, and also to direct a verdict in favor of the defendant; which motions were overruled by the court." Such a recital as this in that portion of the record to which we look for the evidence, and the evidence alone, can not be considered.

4. The ground of the motion for new trial complaining that the court failed "to sustain the plea of res adjudicata filed in said case" is entirely without merit. This ground must refer to the following plea, as no other plea except the one responsive to the declaration in attachment is found in the record: [After stating the case] "And now comes the defendant in the above-stated case, and for plea says that under plaintiff's declaration filed in said case it is shown that on Oct. 12th, 1903, upon a suit in the kingdom of Great Britain between the said parties for the same cause of action, said plaintiffs had settled the same by the payment of the money for which this cause of action is instituted to recover. Wherefore defendants say that said cause of action has been fully adjudicated by a court of competent jurisdiction, and that plaintiffs are estopped from proceeding further in said cause." The plea which, therefore, is necessarily referred to as plea of res adjudicata is entirely destitute of the requisites essential to such a plea. Without discussion, it may be pointed out that it fails to plead the judgment of record or the identity of the causes of action.

The other grounds of the motion for a new trial, in view of the rulings we have made above, are without merit.

*Judgment affirmed. All the Justices concur.*