## HARRIS *et al.* v. NEIL *et al.*

1. It is only fraud which results in damage that is actionable; and the statute of limitations, in an action for damages resultant on the commission of the fraud, begins to run from the time the damage occurs.

2. "Where a judgment is pleaded as an estoppel, the burden is upon the party relying upon the estoppel to sustain the plea, by showing that

the particular matter in controversy was necessarily or actually determined in the former litigation; and if it appear, from the record introduced in support of the plea, that several issues were involved in such litigation, and the verdict and judgment do not clearly show that this particular issue was then decided, before such plea can be sustained this uncertainty must be removed by extrinsic evidence showing that such matter was then decided in accordance with the contention of the party relying upon the plea."

3. An owner of land conveyed it to his wife for life, with remainder to his children. The life-tenant died before the grantor. The latter died testate, and in his will empowered his son to do with his estate as the testator might do if he were living. The deed was unrecorded at the death of the grantor. The son mortgaged the land to a bank, of which he was president, to secure his father's indebtedness, contending that the deed from his testator was void because it had never been delivered. Three of the remaindermen (plaintiffs in the present action) brought a partition suit against the son, which resulted in a decree declaring that each was the owner of a stated undivided interest in the land and directing a sale subject to confirmation. Just before the sale the bank's mortgage was recorded, and the son, who was president of the bank, made proclamation of it as an encumbrance on the land. The plaintiffs purchased the land at that sale, which was confirmed by the court. The present action, in part, is to recover damages on the ground that the son and the bank conspired to defraud the plaintiffs by fraudulently encumbering their property, with knowledge that the deed under which they claimed was valid and had been delivered. *Held*, that, as the plaintiffs purchased the land, they were not injured by any depreciation in price on account of such encumbrance and the proclamation respecting it.

4. A judgment dismissing an action on the ground that the allegations were not supported by proof is the equivalent of a judgment of nonsuit, and does not conclude the plaintiffs from bringing anew their action.

5. Where an executor by a misuse of the power in the will of his testator fraudulently encumbers land which the testator previously conveyed to another, but the deed to the land is unrecorded, and the encumbrancer is innocent of the fraud and ignorant of the rights of the grantees, the payment of the encumbrance by the grantees, whether out of the proceeds of a sale of the encumbered land or otherwise, will not relieve the perpetrator of the fraud from damages consequent upon his fraudulent act.

6. Other excerpts from the charge are criticised; but, while perhaps not altogether apt in expression, they are not of such a character as to require a new trial.

JANUARY 12, 1916.

Action for damages. Before Judge Larsen. Houston superior court. December 21, 1914.

H. C. Harris, in July, 1883, conveyed a house and lot to his wife, Zetella Harris, for life, with remainder to her children. The life-

tenant died in 1888. In 1893 H. C. Harris died, leaving a will in which his son, W. H. Harris, the nominated executor, was given full power to do, with reference to the property of the testator, whatever the testator might do if he were in life. On January 14, 1897, W. H. Harris, under this power, gave a mortgage on this and other land to the Dow Law Bank, of which he was president. This mortgage was not recorded until November 30, 1904. On October 2, 1899, as executor and under the power contained in his father's will, he executed to the Security Investment Company a deed to secure a loan of $2,500, the net proceeds of which were paid to the Dow Law Bank and credited upon its mortgage. The deed to the Security Investment Company was promptly recorded. On March 13, 1905, Mrs. Zetella H. Neil, Mrs. Gertrude Brown, and Mrs. Lucile Harris Little, children of Mrs. Zetella Harris, brought an action for damages against W. H. Harris and the Dow Law Bank, alleging the foregoing facts, and setting up that the deed from H. C. Harris to their mother for life, with remainder to her children, was properly executed and delivered to the life-tenant, who gave it to her brother for record. The brother was the cashier of her husband's bank, and, instead of filing the deed for record, he negligently left it in the bank of his employer. W. H. Harris was informed of the delivery of the paper, and, notwithstanding his knowledge that the deed had been delivered, he conspired with the bank to defraud the remaindermen by executing a mortgage to the bank, and also by borrowing, upon the faith of the property, money from the Security Investment Company and turning the proceeds thereof over to the bank. Plaintiffs instituted a suit against W. H. Harris for partition of the property, and obtained a decree for its partition among the common owners, declaring that each of the plaintiffs had 6/35 interest in the property. Pursuant to the decree the property was advertised for sale at public outcry on the 1st Tuesday in December, 1904. The plaintiffs recognized that inasmuch as the Security Investment Company obtained its lien before the record of the deed to them, and without notice of it, its rights were superior to petitioners', and agreed that the property should be sold free from that lien, and that the amount due thereon should be first paid out of the proceeds before a division should be had. A few days before the sale of the property W. H. Harris and the bank caused to be re-

corded their mortgage, which showed the various credits thereon, reducing the amount to $2,889.43. When the property was offered for sale W. H. Harris called the attention of prospective buyers to the fact that the bank's mortgage was on record and unsatisfied; the effect of which notice was to depress bidding at the sale, and the property brought $3,000 less than it would have brought but for the conduct of W. H. Harris and the Dow Law Bank. The plaintiffs alleged that they were injured in the amount received by the holder of the Security Investment Company's deed, and also in the decreased price of the property on account of the record of the mortgage of the Dow Law Bank, and prayed to recover damages therefor. The defendants answered, that the deed from Harris's father to his mother for life, with remainder to her children, was never delivered; that the grantor prior to his death informed his son, W. H. Harris, that he had signed the deed, but had never delivered it. The deed was found among the papers of the deceased grantor, and W. H. Harris in good faith, believing that the deed was ineffective as a conveyance of title, under the power contained in his father's will executed the encumbrances in the proper and due administration of his father's estate. They denied all charges of fraud or collusion. They further pleaded that the plaintiff's cause of action, if any ever existed, was barred by the statute of limitations. W. H. Harris specially pleaded an estoppel by judgment, averring that the plaintiffs brought a suit against him to the April term, 1901, of Houston superior court, and sought by their allegations and prayers to make him liable for the $2,500 obtained from the Security Investment Company; in which proceeding a decree was rendered fully and finally adjudicating the plaintiffs' claim to damages on account of the facts alleged in the present suit. A verdict was returned for the plaintiffs in the sum of $3,000, which the court refused to set aside on motion for new trial; and the defendants excepted.

*Miller & Jones,* for plaintiffs in error.

*Guerry & Son,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The gravamen of the cause of action is that the defendants conspired to defraud the plaintiffs, by fraudulently placing on their property two encumbrances. One of these the plaintiffs were forced to pay from the proceeds of the sale of their property, be-

cause the encumbrancer was innocent of any fraud, and made the loan on the faith of the record title being in the testator of one of the defendants, and in ignorance of the plaintiffs' rights. The other encumbrance was alleged to have been used to depress bidding at the sale of the property under a partition decree. The cause of action did not bcome complete until damage resulted from the alleged fraudulent acts. *Hargroves* v. *Nix,* 14 *Ga.* 316. The failure to bring their action within four years from a discovery of the alleged fraud would not bar the plaintiffs of their remedy, where the action was commenced within a few months after the payment of one encumbrance, and of the sale of the property at which it was alleged the defendants used the other encumbrance to chill the bidding. Accordingly, the evidence offered to show notice, in support of the plea of the statute of limitations, was irrelevant on that issue.

2. In support of their plea of estoppel by judgment, the defendants offered in evidence the partition suit brought by the present plaintiffs against W. H. Harris and George H. Slappy (who was the surviving husband and sole heir at law of one of the remaindermen), in which suit a partition of the land described in the deed from H. C. Harris to Zetella Harris for life, with remainder to her children, was prayed. It was therein alleged that they and W. H. Harris were tenants in common in the property described, and that Harris had entered into possession of the land, and had the sole use and enjoyment thereof, and, with knowledge that the title to the property was in the petitioners, he wrongfully and fraudulently procured a loan of $2,500 on the faith of the property, creating a mortgage on the same, by representing to the lender that the title thereto was in the estate of H. C. Harris; and it was prayed that the interest of W. H. Harris in the property be subjected to the payment of that mortgage. In his answer W. H. Harris denied that the title to the property was in petitioner's. He admitted that he procured the loan of $2,500 on the same as executor of his father, and applied the proceeds of the loan to the payment of claims against his father's estate. He also admitted that he represented to the lender that the title was in the estate of H. C. Harris, which representation he averred was true. He denied that the deed from his father to his mother for life, with remainder to her children, had ever been delivered, or was effective as a con-

veyance of title. This evidence was rejected by the court. The plaintiffs had previously introduced in evidence the verdict rendered in that suit, finding 6/35 interest in the land for each of the plaintiffs; and the decree entered thereon, that each recover a 6/35ths undivided interest in the land, and that the land be partitioned by a sale of the property by commissioners, subject to the court's confirmation. Also was introduced the report of the commissioners that the property was sold free from the lien of the Security Investment Company, by virtue of an agreement attached to their report. That agreement recited that the holder of the security deed and the parties considered it best that the property be sold free from the lien of the security deed, and that the sale would divest the lien of the holder of that deed, and the amount due thereon should be paid from the proceeds of the sale upon its confirmation by the court. Also, an interlocutory decree at chambers, dated Feb. 15, 1905, reciting that all parties were present and no objection was made to the confirmation of the sale, and that, upon the payment of the balance of the bid by the purchaser, the sale be approved, and that the commissioners pay to the holder of the security deed from the proceeds of the sale the amount due thereon. Also, the report of the commissioners that they had paid the security deed and had on hand the sum of $1,141.67. Also, the decree at the April term, 1905, ratifying the order of confirmation made at chambers on February 15, 1905, and directing that the balance in the hands of the commissioners, after the payment of costs, be distributed among the parties, according to the interest of each, which was specifically stated.

We do not think that, if the excluded evidence had been received, an estoppel by judgment necessarily would have been established. The verdict was, "we find 6/35 for each of the plaintiffs." That verdict only concerned the interest which the plaintiffs had in the property, and did not comprehend any issue as to the liability of W. H. Harris on account of his alleged fraud in giving the security deed to the loan company. The judgment of the court was no broader than the verdict. A judgment of a court of competent jurisdiction is conclusive between parties and privies only as to the facts which it decides. Civil Code (1910), § 5943. "Where a judgment is pleaded as an estoppel, the burden is upon the party relying upon the estoppel to sustain the plea, by showing that the

particular matter in controversy was necessarily or actually determined in the former litigation; and if it appears, from the record introduced in support of the plea, that several issues were involved in such litigation, and the verdict and judgment do not clearly show that this particular issue was then decided, before such plea can be sustained this uncertainty must be removed by extrinsic evidence showing that such matter was then decided in accordance with the contention of the party relying upon the plea." *Draper* v. *Medlock,* 122 *Ga.* 234 (50 S. E. 113, 69 L. R. A. 483, 2 Ann. Cas. 650).

3. It is contended that inasmuch as the sale was confirmed with knowledge that the Dow Law Bank had recently before the sale had its mortgage recorded, and that W. H. Harris had made proclamation to that effect, and as the plaintiffs were the purchasers at that sale, they had no cause of complaint on account of any depreciation in the price of the property. When the plaintiffs bought the property at the partition sale, they obtained the benefit of any undervalue. If their contention be true regarding the invalidity of the Dow Law Bank mortgage, upon becoming the owners of the property they had their remedy to have the mortgage canceled as a cloud upon their title. If, instead of invoking the aid of the courts in this respect, they sold the property to a purchaser, who gauged his price on the basis of the mortgage lien overhanging the land, the plaintiffs, and not the defendants, are chargeable with the failure to secure a better price for their vendee. Moreover the plaintiffs' acquiescence in the confirmation of the sale, with knowledge of all the circumstances, is a waiver of any irregularity. We do not think the plaintiffs entitled to recover for this item of damages, under the circumstances above set forth; and a contrary instruction was erroneous.

4. The defendants introduced a partial transcript of a record in a suit brought by the plaintiffs against W. H. Harris, as executor, in which certain allegations with respect to the $2,500 mortgage were made; and the judgment dismissing the case because the allegations were not supported by proof. In effect this was a nonsuit, and a judgment of nonsuit does not conclude the plaintiffs on any issue made in that action.

5. At the request of the defendants the court charged the jury that if the plaintiffs consented to the payment of the amount of

the Security Investment Company's mortgage out of the proceeds of the sale of the Harris home place, under the partition proceedings, such payment was a voluntary one, and the plaintiffs could not recover anything from the defendants or either of them on account of the payment of that mortgage. The court gave that instruction with the qualification that if the jury found that the parties consented to such agreement solely because that encumbrance was a legal charge against the property, their consent would not operate to prevent a recovery of damages accruing to them by reason of any fraud in encumbering the property with the lien which was discharged by payment. Under the undisputed evidence the Security Investment Company stood in the relation of an innocent purchaser for value. Its security deed was a lien on the plaintiffs' land and superior to their rights. Without the consent of all the interested parties the property would have been sold subject to that lien, and the plaintiffs would have paid for it in the consequent reduction in price of their property. The preference of the parties that it should be paid out of the proceeds of the sale in no way affects their right to recover of the defendant, if their case in other respects is supported by proof. Civil Code (1910), § 4317; *Fenwick Shipping Co.* v. *Clarke,* 133 *Ga.* 43 (65 S. E. 140).

6. Other excerpts from the charge are criticised; but, while perhaps not altogether apt in expression, they are not of such a character as to require a new trial.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*