ERIE COUNTY WATER AUTHORITY to the Use and Benefit of PRICE BROTHERS COMPANY, DAYTON, OHIO, Plaintiff,

v.

HEN–GAR CONSTRUCTION CORPORATION and Aetna Casualty & Surety Company, Defendants.

No. Civ–78–463.

United States District Court, W. D. New York.

Aug. 6, 1979.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, New York (Michael A. Brady, Buffalo, N. Y., of counsel), for plaintiff.

Birzon, Zakia & Rosa, Buffalo, N. Y. (Nelson F. Zakia, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

The designated plaintiff, Price Brothers Company ["Price Brothers"], instituted this contract action on August 2, 1978. Plaintiff alleges in its complaint that it entered into a contract with the Hen-Gar Construction Corporation ["Hen-Gar"] for the sale of pipe to Hen-Gar and that the defendant Hen-Gar has failed to pay $86,178.31 remaining on the purchase price of the pipe and $11,846.09 in accumulated service charges. Plaintiff also alleges in its complaint that defendant Aetna Casualty & Surety Company ["Aetna"] was the surety on a payment bond entered into by Hen-Gar and that Price Brothers, as a supplier of materials to Hen-Gar, is a beneficiary under that bond. Price Brothers claims, therefore, that it is entitled to payment from Aetna for goods sold to Hen-Gar for which it has not received payment.

The defendants' answer alleges two affirmative defenses and two counterclaims. Hen-Gar's defenses are: (1) the goods delivered were defective; and (2) a contract modification was without consideration and coerced by the plaintiff, rendering the contract unenforceable. In the first counterclaim, the defendants claim that the pipe sold by Price Brothers to Hen-Gar was defective and that Hen-Gar was forced to spend $150,000 to render the pipe suitable for the intended purposes. Moreover, they claim that the delay caused by the defective material caused Hen-Gar to be assessed

penalties of $1,000 per day and to miss the bidding on other jobs, with resulting claimed damages of an additional $300,000. The second counterclaim alleges that Price Brothers misdelivered six sections of pipe which caused Hen-Gar $1,010 in damages for transportation of the pipe to the proper jobsite.

Price Brothers has moved for summary judgment on its own claims and on the defendants' counterclaims. That motion is presently before the court.

In order to understand the motion fully, a brief discussion of the factual background is necessary. During the early summer of 1977, Hen-Gar entered into a contract with the Erie County Water Authority, which was part of Erie County Water Authority Contract 30C. Hen-Gar agreed to construct a sewer system known as the 48-inch diameter transmission main, Section B, Van Der Water Plant to Ball Pump Station, Town of Tonawanda, Erie County, New York.

In order to obtain the supply of the necessary pipe for the sewer system, Hen-Gar entered into a contract with Price Brothers. The parties' original agreement called for Price Brothers to furnish approximately 5,390 linear feet of 48-inch, pre-stressed concrete pipe, along with certain ancillary materials, at the price of $50.00 per linear foot. Plaintiff Price Brothers alleges that this contract was signed on behalf of Hen-Gar by its president, Henry J. Secord, on June 24, 1977.

On or about August 1, 1977, for reasons which are among the facts in dispute, the original contract was modified in writing to provide, among other things, for a price increase from $50.00 to $50.75 per linear foot of pipe. This revision was agreed to by Hen-Gar, and again signed by Mr. Secord. The contract includes the following provisions:

4. WARRANTY AND LIMITATIONS—Price products are warranted to be manufactured in accordance with specifications identified, modified where necessary to meet a reasonable interpretation, and to be free of defects in workmanship or material for a period of one year after date of delivery. Our responsibility under this warranty is limited as follows:

a. To the repair or to the furnishing by us above ground to the job site of a replacement for defective or non-conforming products, or to the allowance of a credit for such products, all at our option, strictly in accord with the procedure stated in Article 5— Claims and Back Charges.

. . . . .

e. We shall not be liable for consequential, indirect or incidental damages, including without limitation, any liquidated damages or penalties of any kind which you may incur. We assume no obligation for expenses of any kind, whether arising from delays during replacement of materials for cause, or otherwise.

. . . . .

5. (b) Backcharges—

(1) Claims for shortages or defective materials or non-conformity to specifications, which would be revealed by prompt inspection, must be made in writing to [Price Brothers] immediately and in any event, within 5 days after you receive the materials so that any such claims can be investigated promptly.

(2) Claims of defective materials or non-conformity to specifications, not discernable by you from prompt inspection upon delivery, first discoverable by you upon installation of the products into the ground, or first discoverable upon failure of a portion of the pipeline to pass certain specified field tests, will be investigated promptly provided you give [Price Brothers] notice in writing within 5 days after completion of the installation or testing. If, upon such investi-

gation satisfactory evidence is received establishing the defect or nonconformity and that any failure was the result of the quality of the product as delivered, your claim will be allowed in writing subject to the limitations of this agreement.

(3) No claim will be allowed except as provided above.

See Copy of Contract between Price Brothers and Hen-Gar, attached to Plaintiff's Motion for Summary Judgment as Exhibit A.

As required by its contract with the Erie County Water Authority, Hen-Gar gave and filed a bond for payment of labor and materialmen in the amount of $432,332.40. Defendant Aetna is the surety on that bond. Hen-Gar, as principal, agreed as a condition of the bond to make prompt payments for all labor and material furnished to Hen-Gar for use in the construction of the sewer line. Price Brothers, as a supplier of such materials to Hen-Gar, is, therefore, a potential beneficiary under the payment bond.

Price Brothers has furnished all the pipe and related materials required under the revised contract with Hen-Gar. Final delivery of the materials occurred in early April of 1978. Defendant has made payments totalling $200,000, but it has refused to pay the remaining $86,173.13 which it owes on its contract with plaintiff. In addition to demanding payment from Hen-Gar on this amount, Price Brothers has demanded service charges, as provided by the contract, at a rate of 1½% per month on the unpaid balance. Plaintiff alleges that the accumulated service charge as of July 1, 1978 is $11,846.09.

■ The initial issue which the court must confront in resolving plaintiff's motion for summary judgment concerns the modification of the agreement between Price Brothers and defendant Hen-Gar. The law of contracts is clear that a contract entered into under duress is voidable. *Aus-*

*tin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130–31, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971); *Diffenderfer v. Heublein, Inc.,* 412 F.2d 184 (8th Cir. 1969). Moreover, as Comment 2 to N.Y.U.C.C. § 2–209 suggests, modifications made under the Code must meet the test of good faith, and "the extortion of a 'modification' without legitimate commercial reason is ineffective as a violation of the duty of good faith." Extorted modifications are not enforceable under the Code. *See J. White and R. Summers, Handbook of the Law under the Uniform Commercial Code,* at 36–41 (1972).

■ The court has reviewed the applicable law and the affidavits presented by the parties. I believe that the allegations contained in the affidavit of Hen-Gar's president, Henry Secord, raise an issue of fact as to whether the contract modification was signed by him under duress. He alleges that Price Brothers offered to supply the pipe at the higher price of $50.75 per linear foot or to rescind the contract and that Hen-Gar, believing it had no other source for the pipe required for its contract with the Water Authority, was forced to agree to the modification. Hen-Gar further questions Price Brothers' alleged business justifications for its offer to modify the price upwards. These allegations are sufficient to raise an issue as to whether the contract modification was extorted and, thus, unenforceable. Since a court cannot resolve factual disputes through a trial by affidavit, the validity of the modified contract cannot be resolved by a motion for summary judgment. *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975).

The second question to resolve concerns the adequacy of defendant's notice under the contract terms. In its motion for summary judgment, Price Brothers argues that, regardless of whether or not the pipe it delivered was defective, defendants' counterclaims based upon allegations of defective pipe cannot be maintained because

Hen-Gar failed to give the notice which is called for by the contract. The applicable notice provisions are in ¶ 5(b)(2) of the contract and are set forth above. Plaintiff argues that Hen-Gar failed to make a *timely,* written claim in accordance with this provision and that any claim of defective pipe or materials therefore is barred under the agreement.

The defendants counter with two arguments. The first essentially is that there is a question of fact as to whether notice was given within the terms of the agreement. The defendants claim Mr. Secord telephoned plaintiff immediately upon discovery of problems with defective snap joints and restraining rings of the pipe and that allegedly these problems occurred throughout the installation. *See* Affidavit of Henry Secord, sworn to on December 4, 1978, ¶¶ 4, 5. Mr. Secord further alleges that plaintiff's representative assured him that Price Brothers would send someone to inspect the alleged defects and that he believed that his numerous telephone calls and meetings with Price Brothers' representatives, and its actual knowledge of the claimed defects, would suffice to insure that it would repair or replace the defective goods. *Id.,* at ¶¶ 8, 10, and 11. Finally, Mr. Secord alleges that he did notify the plaintiff in writing on more than one occasion, and the three letters attached to the Secord affidavit of December 4, 1978 do convey strong complaints about the pipe which plaintiff supplied.

Defendants' second argument is directed at the purpose of ¶ 5(b)(2) of the agreement. They argue that the clear purpose of this provision, in requiring written notice within 5 days, was to allow plaintiff ample opportunity to investigate claims and subsequently to comply with its obligation to repair or replace defective goods when required. Defendants emphasize the investigation language of the provision while the plaintiff claims that written notice within 5 days is clearly required.

■ After reviewing the affidavits and arguments of the parties, I believe there are questions of fact as to whether Hen-Gar, through its president, Mr. Secord, gave notice which satisfies the terms of the agreement. This view of the facts is reinforced by the conflicting arguments about how the notice provision should be interpreted. The law in this circuit is clear that "[w]here contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper." *Aetna Casualty & Surety Co. v. Giesow,* 412 F.2d 468, 471 (2d Cir. 1969); *Heyman, supra,* at 1320. Although plaintiff's argument that Hen-Gar could not blithely ignore a provision requiring written notice has merit, defendants' interpretation that the purpose of the notice was to allow for plaintiff's inspection and warranty compliance is not unreasonable. Therefore, at this stage in the proceedings, in light of defendants' allegations that oral notification of problems with the pipe and some written notice were conveyed to Price Brothers, the court will not grant plaintiff summary judgment precluding all of defendants' counterclaims for failure to give Price Brothers notice.

The last issue which the court must resolve is whether or not partial summary judgment is required with respect to one of defendants' counterclaims. The plaintiff argues that even if the pipe was defective and even if the court were to determine that Hen-Gar complied with the notice provisions of their agreement, Hen-Gar's counterclaim for consequential damages is barred by the terms of the agreement. The relevant portions of the "Warranty and Limitations" provision of the contract are set forth above.

■ Remedies for breach of express warranties may be limited to the repair or replacement of defective goods and may exclude other remedies. *See* U.C.C. §§ 2–316(4) and 2–719. Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. U.C.C. § 2–719(3). On the other hand, U.C.C. § 2–719(2) provides:

Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

Defendants argue that the limited remedy provided for in the contract between Price Brothers and Hen-Gar has failed of its essential purpose and that defendants may resort to other remedies including consequential damages.

■ The limited remedy clause in this case, ¶ 4(a) of the agreement, does not provide simply for repair or replacement. It includes an option for Price Brothers to allow a credit to the buyer for defective or non-conforming materials. Price Brothers claims that this *alternative limited remedy* remained open and precludes a finding that the limited remedy failed of its essential purpose. Although there is an argument for plaintiff that the presence of this additional option should prevent the failure of the limited remedy within the meaning of U.C.C. § 2–719(2), I believe there are questions of fact which preclude resolution by summary judgment of whether the limited remedy has failed of its essential purpose.

First, the court must assume on this motion that defendants' allegations that Price Brothers refused to repair or replace defective materials are true. *See* Affidavit of Henry Secord, sworn to December 4, 1978, ¶¶ 7, 14, and 15. These allegations of course raise certain questions. Moreover, whether a failure of purpose has occurred depends in part on whether either party is deprived of the substantial value of the bargain. *See* Comment 1 to U.C.C. § 2–719. With respect to the credit option of the limited remedy, whether this alternative limited remedy has failed should depend on the results which have been obtained by the warranty and limited remedy. *See* Note, *Article Two Warranties in Commercial Transactions,* 64 Corn.L.Rev. 30, 234–36 (1978). More factual development is necessary before such a determination can be made.

■ The question remaining, assuming as is required that the limited remedy has failed of its essential purpose, is whether the consequential damages sought by defendants in their counterclaims are nonetheless barred by the contract terms. Defendants argue that a seller like Price Brothers cannot rely on a clause precluding consequential damages or rely on U.C.C. § 2–719(3) when it has failed to honor its obligations under the warranty and caused the limited remedy clause to fail of its purpose. It argues essentially that it cannot be left without a remedy. Plaintiff contends, however, that the clause excluding consequential damages, ¶ 4(e), stands independently of the limited remedy clause in the contract and should be given effect in any case.

The law in this area is unsettled. *See Article Two Note, supra.* The plaintiff relies especially on two cases, *American Electric Power Co., Inc. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976), and *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.,* 323 F.Supp. 1300 (S.D.N.Y.1970), *aff'd,* 444 F.2d 372 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971). *But see, e. g., Jones and McKnight Corp. v. Bidsboro Corp.,* 320 F.Supp. 39, 43–44 (N.D.Ill.1970). The court believes plaintiff's position on the consequential damages clause has some merit. Without deciding this issue, however, it is clear that the procedural posture of this case precludes any resolution of the effect of the clause at this time. A careful reading of *County Asphalt, supra,* shows that the court's decision in that case, enforcing the clause excluding consequential damages, was made during trial but after the evidence which had been presented showed that the clause was not unconscionable. *Id.,* at 1302, 1308. As noted above, such a showing is required if consequential damages are to be precluded. I believe the best course is to await trial so that the court can consider all the evidence related to whether the clause is unconscionable and to the effect the clause may have on the defendants.

Therefore, based upon the above discussion, plaintiff's motion for summary judgment is denied in its entirety.

So ordered.