**A–T–O, INCORPORATED, Plaintiff,**

v.

**STRATTON & COMPANY, INC. and Jamison Company, Inc., J. V. (a joint venture), Fireman's Fund Insurance Company, and St. Paul Fire & Marine Insurance Company, Defendants.**

**Civ. A. No. C78–459A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 28, 1980.

---

Trotter, Bondurant, Griffin, Miller & Hishon, Atlanta, Ga., for plaintiff.

H. Fielder Martin, Dillard & Shearer, Atlanta, Ga., George C. Reid, Phillips, Hart & Mozley, Atlanta, Ga., for defendants.

## MEMORANDUM OF LAW AND ORDER

ROBERT H. HALL, District Judge.

In a previous order filed August 3, 1979, this court described the background of this litigation which involves disputes over construction of a rapid transit system in Washington D.C. Briefly, plaintiff rented scaffolding equipment to a subcontractor, Dyghton Corporation, which defaulted on its contract leaving defendant Fireman's Fund Insurance Company, its surety under a performance bond, responsible for completing the work. Fireman's Fund contracted (the "Completion Contract") the job out to J. V., a joint venture made up of defendants Stratton & Company and Jamison Company.

Plaintiff brought suit to recover for certain equipment rented by Dyghton and unreturned. Of significance here is the cross-claim filed by J. V. against Fireman's Fund in three counts seeking a balance due under its contract with Fireman's Fund, and asserting that Fireman's Fund may be liable to J. V. for all or part of any recovery of plaintiff against J. V.

The case comes before the court now on Fireman's Fund's motion for summary judgment on J. V.'s cross-claim. The motion is grounded in a release dated Novem-

ber 4, 1977, executed by Mr. Stratton, the president and sole owner of Stratton & Company, for J. V., which in return for a settlement of some $201,000 released all claims against Fireman's Fund "from the beginning of the world to . . . the date of these presents. . . ."

The main issue now before the court concerns the validity of this release in the face of J. V.'s claim that it was exacted through duress and thus is not enforceable. J. V. advances two theories of duress. One is the "business compulsion" theory; the second is based upon the Georgia case *Whitt v. Blount*, 124 Ga. 671, 53 S.E. 205 (1906).

Turning first to business compulsion, this theory is well discussed in *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir. 1978): "Because the law of duress in Georgia dovetails well with accepted principles of the doctrine of business compulsion, we have no difficulty in apply those principles here. A contract is voidable where undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making the agreement. However, a duress claim of this nature must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim. Thus, the mere fact that a person enters into a contract as a result of the nature of business circumstances, financial embarrassment, or economic necessity is not sufficient. Unless wrongful or unlawful pressure is applied, there is no business compulsion or economic duress, and such a claim cannot be predicated on a demand which is lawful or on the insistence of a legal right. * * * Such economic distress must be attributable to the party against whom duress is alleged. 'Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the [party against whom the contract is sought to be voided], will not be deemed duress.' " (Footnotes omitted.)

Continuing this argument, J. V. advances *Aircraft Associates and Manufacturing Company v. United States*, 357 F.2d 373, 174 Ct.Cl. 886 (1966), in which the court found duress rendering a release invalid.

The facts showed that the government insisted upon plaintiff's releasing part of his claim as a precondition to being allowed to continue work under his contract. Part of the government's wrongful behavior was withholding or refusing to credit some $150,000 to which plaintiff was entitled. The court found an arbitrary and coercive refusal to bargain reasonably, and voided the release.

The Georgia statute on duress is Ga.Code Ann. § 20–503: "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other acts, by which the free will of the party is restrained and his consent induced, will render the contract voidable at the instance of the injured party. Legal imprisonment, if not used for illegal purposes, is not duress."

Under Georgia law, when doubtful claims are settled and compromised, there is sufficient consideration for a valid contract. But where an issue of duress is made, Georgia law requires that the contention which forms the basis for the compromise be made in good faith and be honestly believed in. *King v. Lewis*, 188 Ga. 594, 599, 4 S.E.2d 464 (1939). A contrary conclusion is not demanded by *Rivers v. Cole Corp.*, 209 Ga. 406, 73 S.E.2d 196 (1952) which repudiated *Sylvania Electric Products, Inc. v. Electrical Wholesalers Inc.*, 198 Ga. 870, 33 S.E.2d 5 (1945). *Rivers* and its progeny, including *Dixie Belle Mills, Inc. v. Specialty Machine Co.*, 217 Ga. 104, 120 S.E.2d 771 (1961), and *American Associated Companies, Inc. v. Vaughan*, 213 Ga. 119, 97 S.E.2d 144 (1957) concerned accord and satisfaction and eliminated the "dispute" requirement in some circumstances. However, the court concludes that where duress is in issue, the good faith requirement survives. Generally, whether or not the required good faith is present is a jury question. *King v. Lewis, supra; Dickerson v. Dickerson*, 19 Ga.App. 269, 91 S.E. 346 (1917).

Turning to the second leg of J. V.'s duress theory, that based upon *Whitt v. Blount, supra*, we find that under Georgia

law a threat wrongfully to withhold the property of another may constitute duress: "According to the weight of modern authority, the unlawful detention of another's goods under oppressive circumstances, or their threatened detention, will avoid a contract on the ground of duress, for the reason that in such cases there is nothing but the form of agreement, without its substance." 124 Ga. at 674, 53 S.E. at 206. Similarly, "The seizure of appellant's property combined with the alleged refusal to return the property without the execution of the release sufficiently raised an issue as to duress." *Kelly v. General Motors Acceptance Corp.*, 145 Ga.App. 739, 740, 244 S.E.2d 911, 913 (1978).

■ Before turning to the merits of the summary judgment motion, the court must face a choice of law issue. The Completion Contract signed by J. V. and Fireman's Fund was executed in Georgia and states that it shall be governed by the law of Georgia. The release agreement, however, was executed in California. In the previous order, this court noted that the choice of law issue remained to be decided.

In choice of law, Georgia follows the "grouping of contracts" or "center of gravity" theory on which law should govern contracts. In general terms, an accord and satisfaction should usually be governed by the same law as the main contract. *See generally Eldon Industries, Inc. v. Paradies & Co.*, 397 F.Supp. 535 (N.D.Ga.1975). Both parties have briefed this issue and they agree that Georgia law should be applied to the release. The fact that the execution of the release agreement took place in California was merely fortuitous. The release should be interpreted under Georgia law.

■ In ruling on this summary judgment motion, the court must view the evidence in the light most favorable to the party opposing the motion. *Osterneck v. E. T. Barwick Industries, Inc.*, 79 F.R.D. 47, 53 (N.D.Ga.1978). "The burden is upon the movant . . . for summary judgment to show that there exists no question of fact as to the validity of the executed release." *Kelly v. General Motors Acceptance Corp.*,

145 Ga.App. 739, 740, 244 S.E.2d 911, 913 (1978). This is a difficult burden to carry. All J. V. need do to to prevail is to come forward with sufficient evidence to raise a factual issue on such matters as good faith or duress. *See Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir. 1973). J. V.'s proof submitted in opposition to the motion has raised such an issue.

J. V. has presented evidence by affidavit and deposition tending to show the following facts: Upon completion of the construction, J. V. was to be paid a $150,000 flat fee, "promptly." J. V. finished the project two months early, thus also becoming entitled to some $100,000 as "shared savings." J. V.'s final invoice to Fireman's Fund was for $300,985.89, a comparatively small portion of which was for disputed items. J. V. shows that the funds due it from Fireman's Fund, including those very large sums which were undisputed and which Fireman's Fund had a contractual obligation to pay promptly, had been due and unpaid for six months, at which time the financial pressures upon Stratton & Company were such that Mr. Stratton on November 3, 1977, went personally to San Francisco to see if he could obtain payment. There, Mr. Stratton negotiated with Mr. Meeker of Fireman's Fund, who refused to pay him even the undisputed amounts, apparently in order to coerce Stratton's agreement to take less than he was owed on the disputed items. Meeker was offering only some $201,000.00 total. Stratton avers that Meeker never gave any reason or justification for the low settlement figure he offered, nor would he provide any breakdown of the items he proposed to pay for. He simply refused to account for the amounts he was refusing to pay. Stratton asserted that Meeker's figures never added up—they were just arbitrary figures. For example, on one disputed point Stratton pointed out to him that even under Fireman's Fund's belated and new interpretation of the contract, it would be entitled only to a credit of $33,000 and not to the $47,000 Meeker asked. Meeker indicated in response that the facts made no difference—he would demand the $47,000 credit anyway.

Mr. Stratton avers that he could not tell what items they disputed because Meeker would never give him an explanation of his figures. Mr. Stratton alleges here that $250,000 of the $300,000 claim J. V. pressed was undisputedly owed. Fireman's Fund denies this. It seems that there is a current factual dispute about which items were then in dispute. Stratton testified that he pointed out to Mr. Meeker that Meeker's withholding funds for the undisputed items created great financial pressure on Stratton, and Mr. Meeker actually laughed at him and stated or implied that that was his purpose. Meeker told Stratton that Stratton could accept the offered amount or get nothing and sue Fireman's Fund, which would delay payment for years.

Stratton testified that he proposed to Meeker that Fireman's Fund pay the undisputed amounts and "we'll argue about the rest. And he laughed in my face, and he said, 'Are you crazy? That's no way to negotiate.' He said 'No way. Either take what I'm going to give you or forget it, sue me. We've got lots of lawyers. We've got lots of time, and we've got a lot of your money.' That is exactly what he said."

Stratton testified that he despaired of reaching a reasonable settlement with someone so arbitrarily inclined. He returned to his hotel and that evening discussed the impasse by telephone with his partner, Mr. Jamison. They decided to take the settlement figure because they had no choice. Stratton believed the alternative to getting the money was "to stop being a contractor" because he could not afford to carry on his business.

Stratton has produced evidence that because of the negative financial position of his books, his ability to secure bonds for future construction jobs was impaired. He was about to secure two more projects if bonding were available. This testimony is buttressed by the affidavit of Armond D. Wells, Jr., a Certified Property Casualty Underwriter, that it was his opinion that without reaching a settlement and receiving payment from Fireman's Fund, J. V. would have been unable to secure bonding for future jobs, whereas with it he could, and did soon secure three jobs which produced a profit for his business.

After discussing it with his partner, Stratton called Meeker and "I told him I had no alternative. . . . I said, 'Meeker, your numbers don't add up. They don't make sense. I mean, even saying that you deduct this and you deduct this and you deduct this, they still don't add up.' I said, 'It's an arbitrary, unreasonable, unfair, harmful settlement that you are willing to give us.' And he said, 'Tough.' "

The next day, the settlement was paid and the release was signed.

In sum, J. V. asserts in derogation of the release that "Fireman's Fund . . . withheld all amounts due in an effort to bludgeon a release from J. V." Stratton avers his belief that the reason Meeker took a capricious and arbitrary position in refusing to pay, is that Meeker or his associates failed to budget properly for the job, and would have been embarrassed to go to their superiors to ask for more money.

As noted above, to withstand a claim of duress, the "oppressive" party must have behaved in good faith in asserting the claim or creating the dispute which was allegedly compromised by the release agreement. Fireman's Fund argues as follows: "Refusal to pay amounts disputed in good faith on a contract is a lawful act. *See LaCrosse Garment Manufacturing Co. v. United States,* 432 F.2d 1377, 193 Ct.Cl. 168 (1970). Therefore, economic duress cannot arise from Fireman's Fund's lawful refusal to pay the sum which it in good faith believed was not owed. *See Chouinard v. Chouinard, supra,* at 434." The court finds under the authorities, however, that a jury question is presented on whether Fireman's Fund's refusal to pay was in good faith.

The *LaCrosse* case, cited by Fireman's Fund, indicates that it would be a wrongful act to take a bargaining position which was "a pretense, made for the purpose of extracting . . . [a concession] not sincerely believed to be warranted." 432 F.2d at 1383. A further relevant example of what is *not* good faith is provided by *Sylva-*

*nia Electric Products, Inc. v. Electrical Wholesalers, Inc., supra,* where the court found that the oppressive party's position "was merely a petulant effort to force its will upon the manufacturer, despite the repeated declarations to it that under the terms imposed by the government no commission could be allowed any wholesaler. * * * Good faith requires something more than what the jury was authorized to find was a mere arbitrary and capricious charge against the creditor, where every fact and circumstance impeached the idea that the debtor could reasonably expect a commission on a sale from which a commission was barred by terms imposed upon the seller." 198 Ga. at 876, 33 S.E.2d at 9. *Sylvania's* subsequent history has not undermined its discussion of what is not good faith.

*Erie County Water Authority v. Hen-gar Construction Corp.,* 473 F.Supp. 1310 (W.D. N.Y.1979) unlike this case, was brought under the Uniform Commercial Code but is relevant to our question. The court in that case found an issue of fact as to whether a disputed contract modification was executed under duress. Where the test of good faith was applied, the court found a fact question as to whether a "modification" upward of a contract price without legitimate commercial reason was a violation of the duty of good faith. " . . . [M]odifications made under the Code must meet the test of good faith, and 'the extortion of a "modification" without legitimate commercial reason is ineffective as a violation of the duty of good faith.' Extorted modifications are not enforceable under the Code." 473 F.Supp. at 1313. The court ruled that evidence that the purchaser agreed to an increase in the purchase price because it believed it had no other source for the pipe required to fulfill its contract with another, and thus that it was forced to agree to the modification, raised a genuine issue of fact as to whether the modification was signed under duress.

What Mr. Meeker did was a great deal more than the "hard bargaining" approved in the cases cited by Fireman's Fund. " '[I]t would be manifestly unfair to dismiss a claim on the strength of a release which was obtained as a result of the very fraud complained of . . . .' Although releases of the type involved herein are enforceable, '[j]udicial hostility toward waivers generally requires that the right of private suit for alleged violations be scrupulously preserved against unintentional or involuntary relinquishment.' [Citation.] Such agreements require a scrupulously careful examination of the facts and circumstances surrounding their execution. [Citation]. Accordingly, there are material issues of fact which are unresolved and which foreclose summary judgment at this stage of the proceedings." *Weinraub v. International Banknote Company, Inc.,* 422 F.Supp. 856, 860 (S.D.N.Y.1976).

In sum, there are factual issues remaining for decision on various issues including good faith and duress. Accordingly, the motion of Fireman's Fund for summary judgment on the cross-claim is DENIED. J. V.'s motion for leave to file a supplemental brief is GRANTED. The same has been filed and considered.