## HICKMAN *et al. v.* CORNWELL.

1. There is no law in this State against a daughter's voluntarily paying her father's debts.

2. Where a wife and daughter executed a deed to one who used the money to pay debts of the husband and father of the plaintiffs, this would not give the wife any right to have the deed canceled and to recover the land, although the grantee may have known of the purpose of the sale, unless he was a party to a scheme to get the wife to sell her land in order to pay her husband's debts, in which event the wife could recover to the extent of her interest in the land.

3. The allegations of the petition are not sufficient to support the case on the theory that the deed should be canceled and the land recovered because the deed was obtained by duress.

4. Mere general allegations that deeds to land were obtained through fraud are not sufficient to withstand a demurrer. It is necessary that the plaintiff set out, by specific allegation, of what the fraud consists.

5. Mere inadequacy of price is not alone sufficient reason for setting aside a deed to land, especially where the allegation as to its real value is uncertain as to the time when it was of that value—whether at the date of the sale, or that of bringing the suit.

6. Under the allegation that the wife conveyed her interest in the land to the vendee, who was in collusion with the husband's creditor, for the purpose of paying a debt due by her husband to the creditor, she has a cause of action to the extent of her interest in the land.

JUNE 16, 1916.

Equitable petition. Before Judge Park. Jasper superior court. February 15, 1915.

The petition of Mrs. Mary C. Hickman and Mrs. Lula Hickman Atwood alleged substantially as follows: They are the owners of and claim title to a certain tract of land in the city of Monticello, containing fifteen acres, which was conveyed by deed from O. G. Roberts to Mary C. Hickman and children. Also two and one half acres conveyed by deed from Mrs. D. R. Glover to Mary C. Hickman. Some time prior to December 20, 1907, H. W. Hickman, husband of Mary C. Hickman, and father of Lula Hickman Atwood, bought of J. L. Benton a certain tanning outfit, for which Mary C. Hickman executed and delivered to the Jasper County Bank certain mortgage notes on the above-described property for the sum of about $900. J. L. Benton was the cashier and George W. Cornwell was the assistant cashier and bookkeeper of the Jasper County Bank. The debt for which the mortgage was executed and delivered was in fact the debt of H. W. Hickman, which fact was

known to J. L. Benton and G. W. Cornwell. J. L. Benton, acting in collusion with and in the knowledge of G. W. Cornwell, falsely and with fraudulent intent represented to H. W. Hickman that he would institute criminal prosecution against Hickman, and would sell his home and all possessions on the following Tuesday, if the mortgage was not paid off on that day. The threats and false and fraudulent methods of J. L. Benton, in collusion with G. W. Cornwell and Doyle Campbell, were made with the knowledge and at the instance and request of G. W. Cornwell. Doyle Campbell, attorney for defendant, by letter dated December, 1907, to Lula Hickman Atwood, represented that he was attorney for her father, H. W. Hickman, and requested her to sign under her mother's name the deed to the defendant to the property herein sued for, when in fact he was acting as paid attorney for G. W. Cornwell, J. L. Benton, and the Jasper County Bank, and the representations to induce the signature were false and fraudulent. By reason of the frauds, threats, and duress practiced upon petitioners and H. W. Hickman, they executed and delivered to G. W. Cornwell a deed to thirteen and one half acres of land, being a part of the land described in this petition. At the same time G. W. Cornwell employed A. Y. Clement, who threatened H. W. Hickman with criminal prosecution unless the deed was signed by his wife and daughter. Lula Hickman Atwood is a child of Mary C. Hickman, and was in life at the time of the execution of the deed from O. G. Roberts to Mary C. Hickman and children referred to in the deed. The price received for the land was $1150, which was grossly inadequate, which inadequacy was caused by the fraud practiced on petitioners at the time of the execution of the deed. G. W. Cornwell was the assistant cashier of the Jasper County Bank at the time of the transfer of the property in the deed from petitioners to him, and the consideration of the deed was a debt of the husband of Mary C. Hickman due the Jasper County Bank, and the money was paid to the Jasper County Bank by Cornwell, and petitioners have never received any money from the sale. The actual market value of the property conveyed was $3,000, and defendant knew when the deed was made and delivered to him that the property was worth much more than $1150. Petitioners have, upon occasions since the deed was delivered, offered to restore to G. W. Cornwell all that he had paid out, with interest, on the

land described; and this offer was made some time prior to June 15, 1908, as soon as the fraud was known to petitioners. They still offer to refund such amount as may be due him after an accounting for the profits and other property of the petitioners. The profits of the premises are worth $300 per year. Defendant has sold and destroyed all of the tanyard implements and houses, of the value of $600. Petitioners pray, that the deed from Mary C. Hickman and Lula Hickman Atwood to G. W. Cornwell be declared null and void, and be delivered up and canceled; that plaintiffs recover reasonable profits from the premises; and that they recover of the defendant the sum of $600, the value of the tanyard property. The court sustained a general demurrer to the petition, and the plaintiffs excepted.

*I. W. Rountree* and *Eugene M. Baynes,* for plaintiffs.

*A. Y. Clement* and *Greene F. Johnson,* for defendant.

HILL, J. (After stating the foregoing facts.) H. W. Hickman bought certain property from the assistant cashier of the Jasper County Bank, and Mrs. Mary A. Hickman, his wife, gave the bank a note and mortgage for the debt. The deed attacked was given by the plaintiffs, Mrs. Mary Hickman and her daughter, Mrs. Atwood, to Cornwell, the assistant cashier of the bank, to pay off the bank. The petition does not say so in terms, but in effect that the purchase-money paid by Cornwell to Mrs. Hickman and her daughter was to be applied to the debt due the bank. That can have no application at all to the daughter. There is no law against a daughter paying her father's debts. Therefore the allegation and demurrer as to paying the debt of the husband by the wife and daughter would apply only in so far as the wife was concerned, to her interest in the land. The mere fact that she may have sold the land to Cornwell and may have used the money to pay her husband's debt would give her no right of recovery, although Cornwell may have known that this was the use intended, unless there was a scheme to get her to pay her husband's debt and Cornwell was a party to that scheme. If there was, then to the extent of her interest there are sufficient allegations to bring the case within the rulings in the cases of *Kent* v. *Plumb,* 57 *Ga.* 207, and *Bond* v. *Sullivan,* 133 *Ga.* 160 (65 S. E. 376, 134 Am. St. R. 199).

It is alleged that Benton threatened to prosecute the husband and to sell all he had if he did not pay the debt by a time named;

but that was a threat to the husband and father, and there was no allegation that Benton or any one else made any threats directly to the wife and daughter. Indeed, there is no allegation that the father communicated the threats alleged to have been made to the wife or daughter, or that the father used them in order to get the deed. The allegations do not make out a case of duress as to these plaintiffs. There is a very serious question as to whether the allegation that he would prosecute the husband alone makes a case of duress, even if made to the plaintiffs; because it is not alleged that he had committed any crime, or what it was. A general threat to prosecute is alleged, without more. Whether this is a sufficient threat to constitute duress is questionable. But waiving that, and treating it as sufficient for the purpose of this argument, there is no duress on these plaintiffs.

Another allegation is one of fraud, in that Doyle Campbell wrote a letter to the daughter, representing himself to be the attorney of her father, and asking that she sign the deed with her mother, when in fact he was not her father's attorney, but was the attorney of Cornwell, Benton, and the Jasper County Bank. There is no allegation that the father did not in fact desire her to sign the paper, or did not request her to do so. Nor is there any allegation that he did not authorize Campbell to make the request. If he had requested it, or authorized Campbell to request it, the mere statement that Campbell was his attorney would not alone suffice to set aside the transaction, if it would be a sufficient fraud to accomplish that result even if the father did not request it.

There were allegations that "by reason of the frauds, threats, and duress practiced upon H. W. Hickman and themselves, that they executed and delivered to G. W. Cornwell, the defendant herein named," the deed sought to be canceled. In another place it is alleged that Cornwell employed another attorney, A. Y. Clement, who threatened the husband and father with criminal prosecution unless the deed should be signed by his wife and daughter. It was then alleged generally that "defendant, knowing of the threats, fraud, and duress, fraudulently schemed and connived by subtle arguments and acts in consonance with other people, and by other fraudulent means caused petitioners to make and deliver said deed described in paragraph nine of this petition." This general allegation that defendant "connived by subtle

arguments and acts in consonance with other people," and that "by other fraudulent means" he caused the petitioners to make the deed, is entirely too general to amount to an allegation either of duress or fraud upon the petitioners. Allegations of "subtle arguments" and of "acts in consonance with other people" do not indicate specific acts of fraud, and the allegation that the plaintiffs were induced to make the deed "by other fraudulent means" is entirely too general to withstand a demurrer. Fraud must be alleged in something more than adjectives. *Anderson* v. *Goodwin,* 125 *Ga.* 663 (54 S. E. 679).

The next ground asserted for setting aside the deed is that the plaintiffs sold the property at a price below its value. The price at which the defendant bought it was $1150. The allegation in regard to its value is: "Petitioners show that the actual market value of said property described in paragraph nine of this petition to be $3,000." Whether they showed it to be $3,000 at the time when it was sold, or about six years later, when they brought the suit or made the allegation, is not clear; but if it referred to the former time, the mere fact of selling property of the value of $3,000 for $1150 is not alone sufficient to authorize a decree that the deed be canceled. Civil Code, § 4244.

Upon the whole, no case is made out by the petition, except to the extent that the wife alleges that she sold and conveyed her interest in the property to Cornwell for the purpose of paying a debt due by her husband to the bank; that Cornwell was the assistant cashier of the bank; and that he and the cashier of the bank colluded to obtain the conveyance from her, so that in effect he participated in collecting for the bank its indebtedness by obtaining a conveyance from her and paying the debt to the bank, which was less than the value of the property. Accordingly, the judgment of the court below is reversed, with direction that, to the extent of the allegations with respect to the last-mentioned matter, the case be reinstated as to the wife; but in other respects the judgment is affirmed.

*Judgment reversed, with direction.   All the Justices concur.*