### KELLER *v.* LEVISON.

1. In a petition seeking cancellation of certain contracts and conveyances on. the ground that they were obtained by duress, the allegations relied on to show duress were insufficient, and were specially demurrable.
2. The overruling of the special demurrer °rendered nugatory all subsequent proceedings on the trial.
3. The court erred in refusing a new trial.

No. 5903. NOVEMBER 17, 1927.

Equitable petition. Before Judge Highsmith. Glynn superior court. December 31, 1926.

*Bennet, Twitty & Reese,* for plaintiff in error.

*Krauss & Strong,* contra.

HILL, J. Mrs. Belle Levison brought her petition against Mrs. Jennie Keller, and alleged in substance the following: She is the true and lawful owner of her home and residence, No. 801 Monk Street, Brunswick, Georgia, and the furniture therein. The property was purchased by her on or about June 10, 1908, for $3400, from E. A. Buck, now deceased, of Tift County. Her deed from Buck was duly recorded. She and her husband, Sigmund Levison, and her four children immediately went into possession, and she has continuously, peaceably, notoriously, and uninterruptedly remained in possession of the property from 1908 to the present time. Sigmund Levison died, and the plaintiff and her children are now in the possession of the property, and her title is good and perfect but for the cloud upon it as hereinafter set forth. By paragraph 8 it is alleged that on July 20, 1922, "by threats and menaces, the defendant urged, constrained, and compelled your petitioner to execute a deed to secure debt for an alleged indebtedness due to the said defendant by petitioner of $3600, and to

---

Appeal and Error, 4 C. J. p. 935, n. 71 New.
Cancellation of Instruments, 9 C. J. p. 1239, n. 35.

execute a note for that debt payable to the said defendant for said sum of $3600, and to convey to the said defendant all of her said property and home place, and the furniture therein," a copy of which deed is attached to the petition. The deed recites a cash loan to plaintiff of $3600, but she did not borrow $3600 from the defendant on that day or at any time, and the debt, if due to the defendant, "was a debt of petitioner's said husband, S. Levison, and not any debt whatsoever of this plaintiff; and this plaintiff is not bound under the law for the same; and the said deed to secure debt, exhibit B, is void in law and should be surrendered and canceled." It is alleged that the deed to secure the alleged debt was and is "a pretext and a sham;" it is not and never was plaintiff's individual debt, and she only executed and signed the deed and promissory note creating the said lien upon her individual home and property "upon the threat made by the defendant that if the same was not done she, the defendant, would prosecute petitioner's said husband for some alleged and fancied wrong-doing on his part in connection with a bankruptcy proceeding; and that unless petitioner executed said mortgage and deed to secure debt upon her home and property, to secure her said husband's debt to the defendant, or to her husband, D. L. Keller, petitioner's husband would be prosecuted and sent to prison." These threats acted upon plaintiff's fears; and while she believed at all times that her husband was a good man and free from any wrong-doing, the defendant was persistent in her threats of prosecution of her husband, so that plaintiff through her love and anxiety for him signed the note for $3600 and the deed to secure the debt, without any consideration whatever moving to her to do so, excepting the threats and constraints above set forth. Plaintiff alleges that the defendant should be enjoined and restrained from transferring or assigning the promissory note and deed to secure debt to any person or persons whomsoever; and both the note and the deed should be canceled as a cloud upon plaintiff's title. Plaintiff prayed that an order be granted, temporarily restraining and enjoining the defendant, her agents and employees, from in any wise transferring or assigning or attempting to transfer and assign the note and the security deed to any person who might claim to be an innocent holder and purchaser before due and for value; and that upon the trial the court, upon verdict

of a jury, render judgment in favor of plaintiff, decreeing a cancellation of the note and deed as not in any way binding upon plaintiff or her property, for the causes and reasons herein set forth; also for general relief.

The defendant filed general and special demurrers. The grounds of general demurrer were as follows: "1. The petition sets out no cause of action against the defendant. 2. The allegations of the petition are not sufficient to authorize the relief for which plaintiff prays. 3. The petition is duplicitous in that it seeks to have set aside and canceled the deed to secure debt of July 20, 1922, from plaintiff to defendant, and the indebtedness of $3600 secured thereby, upon the theory that the same was not the debt of plaintiff to defendant, but of plaintiff's husband to defendant or defendant's husband, and also upon the theory that said deed to secure debt and the note for which it is given, were obtained from plaintiff by threats and menaces and other forms of duress." The special demurrers which were not overruled were as follows: "5. It is not alleged in the 8th paragraph or elsewhere in the petition by what means and in what manner the defendant urged, constrained, and compelled plaintiff by threats and menaces to execute the deed to secure debt and note for $3600 of July 20, 1922." "7. The allegations of the 12th and 13th paragraphs with reference to the threat or threats made by defendant to plaintiff are vague, indefinite, uncertain, and evasive, and for these reasons said paragraphs should be stricken: (a) the place where, and the time when, the alleged threat or threats were made are not stated; (b) it is not stated when the alleged fancied wrong-doing on the part of plaintiff's husband in connection with the bankruptcy proceeding occurred, nor does it appear that any wrong-doing of which he was charged had not long since become barred by the statute of limitations applicable to such crime; (c) all such allegations are irrelevant, immaterial, and impertinent, and illustrate no issue involved; (d) they are inflammatory and prejudicial to defendant's rights." The court overruled the general demurrer, and sustained the special demurrer except as set out above. To this judgment the defendant excepted. Subsequently to the overruling of the foregoing demurrers the plaintiff amended her petition in certain particulars which is unnecessary to set forth. No demurrer to this amendment was filed.

1. The allegation upon which the plaintiff based her case in part was that the writings sought to be set aside by her had been obtained by duress practiced upon her by Mrs. Keller. In the view we take of this case, the court below erred in overruling the demurrers on that question, for the reason that the petition failed to sufficiently allege facts which would in law amount to duress. Nothing is alleged to show that the plaintiff was in any way under the power of the defendant, and no specific act is alleged as to the defendant exercising any illegal power over her. It becomes necessary, therefore, to consider the question as to what constitutes duress in such case, under our law. The Civil Code of 1910 declares: "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do any act contrary to his free will." § 4116. "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other arts, by which the free will of the party is restrained and his consent induced, will void the contract. Legal imprisonment, if not used for illegal purposes, is not duress." § 4255. See also § 4112.

In *Lichtenstein* v. *Wilensky*, 151 *Ga.* 353 (107 S. E. 49), it was held that in a suit founded on duress, for cancellation of certain contracts and conveyances, and other ancillary relief, the facts alleged and relied on to show duress were insufficient, and that the judge did not err in dismissing the petition on general demurrer. The facts in that case, so far as material here, were as follows: "Defendant, contriving to oppress plaintiff, seized upon his misfortunes and withdrew his financial assistance, with the view of wrecking plaintiff's business and absorbing his interest in all of the realty in which they were jointly interested. With such end in view, not only did he withdraw his financial assistance, but, seeing plaintiff's embarrassment, set about to coerce him by duress, for that: 'In the months of June, July, and August, in the year 1918, he would, from time to time, pretend to be enraged at petitioner, and simulating a violent temper, would enter the room where petitioner's wife was confined to her bed, and there, in an excited and enraged manner, would accuse petitioner to her of being ungrateful to him, and of imposing upon him unjust financial

burdens, and would threaten petitioner's wife with separation from her mother if she did not prevail upon petitioner to have your petitioner to convey to him petitioner's interest in said properties. The repeated visits of [defendant] to the room of petitioner's wife, and the scenes which would follow, would leave her in a nervous terror and dread and physical exhaustion. In addition . . [defendant] compelled her brothers and sisters to cease visiting her in her sick room, or to speak to her, and thus caused them to ostracize her, and so imposed upon petitioner and his said wife in the manner aforesaid that petitioner knew that he must choose between either submitting to the demand of the said [defendant] or allow his wife to endure such further persecution as would inflict upon her complete physical and mental exhaustion and probable speedy death. And therefore petitioner, being unable to make cash payments to his creditors, and . . unable, at that time, to sell his undivided interest in said property, . . and being unable to borrow further money on a third mortgage on his undivided interest in said properties, and hoping that the assistance which the [defendant] promised to him, through the deed to [defendant] and option to repurchase to petitioner, as heretofore recited, would enable petitioner to liquidate his business by selling off his stores, one at a time, from time to time, and thus to be able to realize quickly sufficient cash to pay up all of his creditors and repurchase his said property', . . petitioner, against his free will and solely because of the duress practiced upon him by the [defendant], executed to him the deed aforesaid,' dated August 17, 1918. After execution of the deed and option to repurchase, dated August 17, 1918, plaintiff had opportunity to sell at large profit one of the lots included in the option; and defendant prevented the sale and took the effort of petitioner to make such sale as 'another excuse to renew his visits to the room of petitioner's wife and to renew to her his charges against petitioner of ingratitude, and to renew his terrorizing and persecution of petitioner's helpless wife, as fully heretofore set out and described in . . this petition. And thereupon, in order to enable petitioner to remove his wife from the home of the [defendant], regardless of the result to her in being separated from her mother, and without regard to the result that would be attendant upon the final liquidation of petitioner's business, peti-

tioner, under the persistent systematic, illegal, and unjustifiable duress of the [defendant], and solely because of the same,' entered into the agreement dated May 2, 1919, whereby he was forced to relinquish his option to repurchase property of a stated value greatly in excess of all that plaintiff owed defendant. Influenced solely by the conduct of defendant towards plaintiff's wife, above indicated, plaintiff 'ruthlessly sacrificed his remaining property interests in Savannah' by accepting the notes recited in the agreement of May 2, 1919, and executing the quit-claim deed of June 4, 1919. All of the deeds, contracts, and papers above mentioned are void, because of duress practiced upon petitioner." In delivering the opinion of the court Mr. Justice Atkinson cited a number of Georgia cases, some of which decided what constituted duress under the facts of those cases, and others which held that the facts of those cases did not constitute duress. Reference to those cases may be had by reading the able discussion of the question as reported in the volume set out above. After citing numerous authorities the opinion concluded: "The alleged misconduct of the defendant did not amount to restraint of the person or property of the plaintiff, or of injury or threatened injury to the person, property, or wife of the plaintiff, which the latter could not avoid. The plaintiff and his wife were voluntary inmates of defendant's home, and in no sense was either of them restrained from leaving when they should desire. Under the circumstances it was in the power of the plaintiff to shield his wife from annoyance by the defendant, without being driven to the necessity of executing the papers. Taking the petition in its entirety, the allegations show that the plaintiff in executing the papers acted with due deliberation and without improper coercion on the part of the defendant. A case of duress was not alleged; and the judge did not err in dismissing the petition on general demurrer." If the facts alleged in the *Lichtenstein* case did not make a case of duress, we are of the opinion that the allegations of the present petition do not. Here was a mere vague allegation of threats made by the defendant that if the plaintiff did not sign the deed to secure the alleged debt, "the defendant would prosecute petitioner's said husband for some alleged and fancied wrong on his part in connection with a bankruptcy proceeding," etc.

In *Carswell* v. *Hartridge*, 55 *Ga.* 412 (4), it was held: "When

fraud or duress is relied upon to defeat a deed, the issuable facts constituting such fraud or duress must be specially set forth in the pleas." The facts alleged in the instant case do not amount to such duress as under the law will void the writings sought to be canceled. The above rule has been followed and applied in the following and other cases: *Tolbert* v. *Caledonian Ins. Co.*, 101 *Ga.* 746 (28 S. E. 991); *Hines* v. *Union Savings Bank*, 120 *Ga.* 711, 712 (48 S. E. 120); *Luke* v. *DuPree*, 158 *Ga.* 590, 598 (124 S. E. 13). See also *Bond* v. *Kidd*, 122 *Ga.* 812 (50 S. E. 934); *Mallory* v. *Royston Bank*, 135 *Ga.* 702 (70 S. E. 586); *Bond* v. *Kidd*, 1 *Ga. App.* 798 (57 S. E. 944); *Fenwick Shipping Co.* v. *Clarke*, 133 *Ga.* 43 (65 S. E. 140); *Jackson* v. *Reeves*, 156 *Ga.* 802 (120 S. E. 541). In certain of these cases the duress relied upon was pleaded with particularity and exactness, but in the instant case the allegations were too general and indefinite to be the basis for a ground of recovery on the question of duress. As an illustration of their general and indefinite character, it was alleged that the defendant would prosecute plaintiff's husband "for some alleged and fancied wrong-doing on his part in connection with a bankruptcy proceeding," and "that plaintiff believed at all times that her husband was a good man, and free from any wrong-doing." It will be noted that the general demurrer was overruled, and that grounds 5 and 7 of the special demurrer directed particular attention to the insufficient and inadequate allegations with respect to the duress upon which the case was based. The defendant was entitled, in response to these special demurrers, to know by specific allegations by what means and in what manner "the defendant urged, constrained, and compelled the plaintiff" to execute the writings she sought to have canceled and set aside. She was likewise entitled to know the time and place when and where the alleged threats were made, and that "the alleged and fancied wrong-doing" at least constituted some violation of law for which plaintiff's husband could have been prosecuted in the courts of the State, and that such crime or offense had been committed at such time as not to be barred on July 20, 1922, when the writings were executed. In view of what has been said, and of the authorities cited, the court below erred in overruling the special demurrer directed at the insufficient allegations in the petition, based on the question of duress.

2.　After the ruling on the demurrers, the plaintiff filed an amendment to her petition, to which no demurrer was filed, and no ruling was made upon the demurrer, so far as the record discloses, with reference to the amendment. The case then proceeded to trial on the petition as amended, and resulted in a verdict for the plaintiff; and a motion for new trial having been overruled, the defendant excepted. Under the ruling in the first division of the opinion the error in overruling the special demurrer to the petition rendered all further proceedings on the trial of the case nugatory, and no ruling will be made on questions relating to the further progress of the case.

3.　The court erred in refusing a new trial.

*Judgment reversed.　All the Justices concur.*