JONES *et al. v.* ROBINSON *et al.*

No. 8072.   May 16, 1931.

*William Attaway, H. B. Moss,* and *Scott Candler,* for plaintiffs.
*E. Harold Sheats* and *Carl T. Hudgins,* for defendants.

HINES, J.   A. P., C. A., and Walter Jones filed their petition against M. Y. Robinson, individually and as administrator of the estate of Sarah Elizabeth Robinson, for specific performance of an oral contract relating to land.   They make this case in their original petition: Robinson is the sole heir at law of his deceased wife, Sarah Elizabeth Robinson.   Alice Jane Jones, the mother of the plaintiffs, and Mrs. Robinson were sisters, both being children of Samuel W. Power, deceased.   On May 6, 1909, Samuel W. Power, under the influence of his son-in-law, Robinson, and of his son, James W. Power, was induced to make a will. At that time Samuel W. Power was of advanced age and easily influenced.   By the first item of his will he devised to his daughter, Fannie S. Rosser, a described tract of land, containing 40 acres, more or less, including the dwelling where testator then resided, together with his household furniture and the live stock on said place.   By the second item he devised to his daughter, Sarah E. Robinson, the tract of land containing 70 acres, more or less, which is the subject-matter of this suit.   By the third item he devised to his daughter in law, Samantha M. Power, and her children, a tract of land containing 97 acres, more or less, and a tract of land containing about 6 acres.   By the fourth item he devised to his son, James W. Power, a tract of land containing 76 acres, more or less.   By the fifth item he devised to John H., H. A., Lillie May, Nellie, and Mary Lou Sentell and Alice Deaton a tract of land containing 20 acres, more or less.   By the 6th item

he devised to his daughter, Alice Jane Jones, a tract of land containing 20 acres, more or less. By the seventh item he directed that his house and lot at East Point be sold by his executor and the proceeds divided between his children and representatives of children, each child to have one share and the representatives of a deceased child one share. He directed a like distribution of any money that he might have on hand at the time of his death, after paying his funeral expenses. He nominated his son, James W. Power, as executor of his will. On May 8, 1909, the testator added a codicil to his will, by which he devised to the Sentells and Alice I. Deaton, share and share alike, 10 acres of land.

Robinson and James W. Power knew the contents of this will. Mrs. Jones did not know its contents. When Mrs. Jones learned of the will and its contents she asked her father to make a change in the will, for the reason that she knew that he would not intentionally discriminate against her. When James W. Power and Robinson learned that Mrs. Jones was about to speak to her father with the purpose of trying to get him to make the shares in his estate more nearly equal, they procured him to execute deeds to James W. Power, Mrs. Robinson, and Mrs. Jones to the respective tracts of land which he had willed to them, so that he could not change the disposition of his property. The consideration of the deed to Mrs. Robinson is $1 and natural love and affection. The maker reserves to himself a life-estate in the land thereby conveyed. When Mrs. Jones learned of this "trick" on the part of her brother, James W. Power, and her brother-in-law, Robinson, she expressed to her father her displeasure at his action. When he realized what he had been induced to do, he desired to undo what he had done. He offered to allow the use of his name in an action to set aside and annul the said deeds to Mrs. Robinson and to James W. Power. Mrs. Robinson had no hand in procuring said deed to her. She was devoted to her sister, was likewise fond of the plaintiffs, and did not wish her sister or her nephews discriminated against. She was as much dissatisfied with the situation as was Mrs. Jones. She had lived in the home of Mrs. Jones the greater portion of her time until she was nearly forty years old, and was greatly attached to plaintiffs. Mrs. Jones could have succeeded in the suit to set aside said deeds, her father being willing for her to have the use of his name, and to be

plaintiff in the suit for that purpose, and Mrs. Jones was in the act of procuring counsel to bring such suit. Her father had trusted to his son and son-in-law, and they had led him into this discrimination. He was old and easily influenced, and they took advantage of his confidence in them, and led him into this predicament. He had practically left out as a beneficiary in his estate Mrs. Jones, whom he loved as much as any other one of his children, and was apparently helpless unless something was done to right the wrong he had innocently committed or allowed committed in his name. Mrs. Robinson suggested a settlement of the difference, and in order to keep down litigation between her father and his son, between herself and sister, and between herself and her brother, "she then and there gave" to Mrs. Jones for the plaintiffs the 70 acres of land that her father had deeded to her, possession to take effect at her death. Acting upon this settlement, Mrs. Jones allowed said deeds to stand, and in consideration of said settlement she allowed the will induced by Robinson and her brother to be probated, which she would not have done but for the settlement made by and between her and her sister for the plaintiffs.

Mrs. Robinson expressed her desire that plaintiffs should have said farm after her death. She married Robinson late in life, when she was about 40 years old, and he was about 65 years old, and her prospects of having children had passed. In making this settlement Mrs. Robinson stated that this particular land had come to her from her father, that her grandfather had owned it, that she desired that it stay in her family, and that it was a pleasure to give it to the plaintiffs in settlement of the embarrassing situation, and that she willingly gave it to them to take effect after her death. Her father, brother, and husband assented to this settlement. As consideration for this land Mrs. Jones forbore to enter any suit to set aside said deed and caveat the probate of the will; either of which would have been successful. Mrs. Robinson reiterated this trade time and again while in life, and on her death bed reiterated that this particular tract of land should belong to the plaintiffs. In addition to the benefits received by Mrs. Robinson from owning this valuable property all her life, and from compromising the difference between her sister, brother, and father, plaintiffs, knowing that she had made this

settlement, showed to her extra attention all the balance of her life in part consideration for the settlement she had made upon them. They furnished conveyances for her from her home at Decatur to their home and back, waited on her at their home, and in every way reciprocated the benefits bestowed upon them by this family settlement. To refuse to carry out this trade and contract would cause Mrs. Jones to lose valuable rights. She can not be restored to her former position to have her father attack said deeds, nor can she now caveat his will. For Robinson to refuse to carry out this settlement would be taking an undue advantage of Mrs. Jones and would be doing an injury to plaintiffs for whose benefit the settlement was made. Plaintiffs pray that said parol contract be set up, and that they have a verdict and decree finding that this land is their property, that title is in them thereto, and that possession be awarded them.

The defendant demurred to the petition upon the grounds, among numerous others: (a) It set forth no cause of action either legal or equitable. (b) No consideration for the alleged parol contract is pleaded. (c) It is an attempt to set up an alleged parol contract for the conveyance of lands, without pleading any such performance as will operate to take the contract without the operation of the statute of frauds. (d) Mrs. Robinson was not a party to the alleged fraud and coercion. (e) Under the allegations of the petition, nothing more than a voluntary promise on the part of Mrs. Robinson is set up. (f) The property conveyed or devised by their father to Mrs. Robinson and Mrs. Jones belonged to him, he had a legal right to dispose of it as he saw fit, and no child had any right to complain or foster any legal action in reference thereto. (g) The allegations of the petition in reference to the influence of Robinson and James W. Power over Samuel W. Power are too indefinite to constitute any charge of fraud by them, in that the means used are not set out. There were various grounds of special demurrer to different paragraphs of the petition. Plaintiffs amended their petition by adding thereto a second count. In this amendment they make this case: On May 6, 1909, Samuel W. Power owned considerable valuable lands in Fulton County, and a tract of 20 acres in Cobb County. He was more than 80 years old. His mind was impaired by sickness and senility. From being thrown constantly with his

son, James W. Power, and his son-in-law, Robinson, they gained "supremacy" over him. He looked to them for counsel and advice, thinking they were unselfish and would not perpetrate a fraud upon him. Robinson lived near him and was with him every day. His son lived in Atlanta, but visited him every Sunday. Mrs. Jones was not thrown with her father as much as her brother and brother-in-law were. She did not suspect that they had any selfish intention regarding her father's property. Mrs. Jones lived 12 or 15 miles from her father, and seldom saw him. His son and son-in-law hoped to obtain an undue advantage of her father, to the injury of Mrs. Jones and for their benefit. Trusting his son and son-in-law implicitly, he, on May 6, 1909, made the will the terms of which are set out above. By it James W. Power was given a tract of 76 acres of land worth $7,600, Mrs. Robinson was given a tract of 70 acres worth $7,000, and Mrs. Jones was given a tract of land containing 20 acres, worth about $10 an acre. The son and son-in-law persuaded Samuel W. Power that this disposition of his lands was fair. Mrs. Robinson was in ignorance of what was being done, and took no part in it. The purpose of the son and son-in-law was a selfish one. Robinson hoped that after the death of Samuel W. Power he could induce his wife to sell this land and turn the proceeds over to him. Under the persuasion, fraud, intimidation, and coercion of his son and son-in-law, Samuel W. Power made his will. When Mrs. Jones learned of this will and its terms, she was very much dissatisfied, and so expressed herself to James W. Power and Robinson. Still she said nothing to her father, hoping that he would see his error and change his will, or that he would sell his property and distribute its proceeds equally among his children.

In the spring of 1911 this Fulton County property enhanced in value, and Samuel W. Power was offered $150 per acre for it. The son and son-in-law knew of this offer, and that Samuel W. Power was about to sell it and distribute the proceeds equally among his children. Being in touch with him and having him under their immediate influence, in order to prevent the sale by him and any change in his will they persuaded and fraudulently induced Samuel W. Power to execute deeds to his children to the respective tracts of land given them under his will. The procuring of these deeds was the outgrowth of conspiracy between them

for the purpose of obtaining an undue advantage over Samuel W. Power and over Mrs. Jones. They immediately filed their deeds for record for the purpose of placing the disposition of the property of Samuel W. Power beyond recall, so that he could not change it. Mrs. Robinson took no part in this procedure and knew nothing about it. The deed to Mrs. Jones recites a consideration of $1. Her father reserved to himself a life-estate in the land thereby conveyed to Mrs. Jones. After having obtained the execution of these deeds, the son and son-in-law handed back to Samuel W. Power the deed to Mrs. Jones, with instruction to deliver it to her. She refused to accept it, and explained to her father how he had been duped by his son and son-in-law. When he learned the truth of how he had been imposed upon, he offered to file suit against his son and daughter, Mrs. Robinson. The matter was seriously discussed between Mrs. Jones and her father. At this juncture, with Mrs. Jones being dissatisfied and with Samuel W. Power threatening to bring suit to set aside the deeds which he had been fraudulently, wrongfully, and deceitfully procured to sign to his son and Mrs. Robinson, the latter, with a desire to do right and to have justice done between her and Mrs. Jones, suggested to her father that she would give him back and did give him back the lands deeded to her, for the benefit of the plaintiffs, in settlement of said family difficulty. He already had possession of said lands, and he retained possession for plaintiffs as long as he lived. He had the usufruct, the absolute possession and the fee in said lands for plaintiffs. The settlement of the family difference between Mrs. Robinson and her father was a valid and valuable consideration for said lands so given back to Samuel W. Power for the benefit of plaintiffs. After the death of Samuel W. Power on December 18, 1916, it was agreed between plaintiffs and Mrs. Robinson that she should have the use of this land the rest of her life, holding the life-estate for herself and the fee for the plaintiffs. Under this verbal agreement she remained in possession of this land until her death on February 14, 1926. During her sickness Robinson was left in possession of said land, having knowledge all the time of the original settlement between her father and Mrs. Robinson, to which settlement he had agreed. When it was evident that Mrs. Robinson could live but a few more days, Robinson reiterated to plaintiffs that he knew that

the land was the land of plaintiffs; and the only difference between them was that he made claim to some small amount for improvements made upon this land during the life-tenancy of Mrs. Robinson. After the death of Mrs. Robinson the plaintiffs called upon Robinson to adjust the little differences as to his claim for permanent improvements of this land, at which time he claimed to be too ill to attend to it. They called again to see him about adjusting this little difference and having him formally turn said land over to them, when he flatly refused to surrender said lands or to enter into any adjustment of his claim for improvements, but, to the surprise of plaintiffs, claimed to own the lands.

Plaintiffs charge that the procuring of Samuel W. Power by his son and son-in-law to make the unjust, unfair, and inequitable will that he signed on May 6, 1909, was a fraud upon Samuel W. Power and upon Mrs. Jones, which said son and son-in-law conspired from the beginning to perpetrate upon them. They took advantage of their relationship to him and their opportunity to influence him, and said will itself was an unequal, unfair distribution of the property of Samuel W. Power. Robinson, in order to obtain an unfair advantage of Samuel W. Power in his dotage and in his senile mental condition, assisted by James W. Power procured this will to be made. Plaintiffs charge that a glaring fraud was practiced on Samuel W. Power in his senile mental condition and a fraud upon Mrs. Jones. The gross inequality shown between the children of Samuel W. Power by the terms of the will alone is itself an evident exhibition of the fraudulent scheme of said Robinson and James W. Power. Not content with this fraud, when this land became more valuable in 1911, they then committed fraud upon fraud against Samuel W. Power in his weakened condition of mind, and took advantage of his confidence in them, and procured him to execute the deeds hereinbefore set out. Samuel W. Power had the same love and affection for Mrs. Jones that he had for Mrs. Robinson, and plaintiffs charge that of his own will and accord he would not have made the great difference between the two in the distribution of his property, and said deeds to James W. Power and Mrs. Robinson are void. The trade made between Mrs. Robinson and her father, whereby she gave to her father for the benefit of plaintiffs the land sued for in settlement of the family difference between them, was for a

valuable consideration, the same being a settlement of a family difference. The deeds from Samuel W. Power to James W. Power and Mrs. Robinson were void and could have been easily set aside had Samuel W. Power instituted suit for that purpose; and for this reason said consideration was valid. If said deeds could not have been set aside, still the settlement of this family difference was a valid and valuable consideration to Mrs. Robinson, and title passed by said parol agreement fully executed by Samuel W. Power by not bringing the suit, and title passed into him to said lands for the benefit of plaintiffs. The possession of Samuel W. Power of said lands until his death in 1916 under said settlement was, in effect, possession by plaintiffs. The permissive possession under the contract between plaintiffs and Mrs. Robinson during the remainder of her life was, in effect, possession by plaintiffs. The possession of said property by Robinson after the death of his wife is wrongful; and the title being in the plaintiffs, they are entitled to the possession of said property. They pray for a decree that the title to said lands is in them, and that they have possession thereof.

Robinson, in his individual capacity and as administrator, demurred to this amendment, upon the grounds, among others, that (1) it sets forth no cause of action either legal or equitable; (2) it sets up a separate and distinct cause of action from the one originally declared upon; (3) no privity of contract is alleged between the plaintiffs and defendant; (4) plaintiffs are attempting to engraft upon a petition for specific performance the common-law action for the recovery of land, all of which is repugnant to the cause of action originally declared upon; (5) no cause of action is set out in the original petition, and there is nothing by which the plaintiffs can amend; (6) no such performance is pleaded as would take the alleged parol contract out of the operation of the statute of frauds; (7) the parties have been guilty of the grossest laches, and equity should not now intervene to set aside these deeds; (8) the representative of Samuel W. Power should be made a party to the suit, and no excuse is alleged why he is not such party; (9) it affirmatively appears that Samuel W. Power had sufficient capacity to make the deeds and the will at the times set out in this amendment, and all persons interested have affirmed and ratified all his acts and are bound thereby; (10)

the property disposed of by Samuel W. Power was his, and he had a right to dispose of it as he saw fit, and no person had a right to complain.

The court sustained the demurrers to the petition and to the amendment, on each and every ground, and dismissed the case. To this judgment the plaintiffs excepted.

■ Does the original petition make a case for specific performance of the parol agreement which the plaintiffs set up therein? Should the petition be treated as setting up a gift of this land by Mrs. Robinson to Mrs. Jones for the plaintiffs? The plaintiffs in their petition expressly denominate this transaction as a gift of this land by Mrs. Robinson to Mrs. Jones for them. After setting forth the dissatisfaction of Mrs. Jones with the conveyances which her father had made to his son, James W. Power, and to Mrs. Robinson, that the father had consented that Mrs. Jones might use his name in bringing suit against the grantees in these conveyances for the purpose of setting these conveyances aside, that Mrs. Jones was in the act of bringing suit for this purpose, and that Mrs. Robinson in order to keep down such litigation had suggested a settlement of the difference, the plaintiffs allege that she "then and there gave" to Mrs. Jones for the plaintiffs the land which her father had deeded to her, possession to take effect at her death. The plaintiffs further allege that Mrs. Robinson in making this settlement stated that this land had come to her father from her grandfather, that she desired that it stay in the family, that it was a pleasure to give it to the plaintiffs in settlement of the embarrassing situation, and that she willingly gave it to the plaintiffs to take effect after her death. Thus the plaintiffs expressly state in their petition that Mrs. Robinson gave this land to their mother for them. Under the familiar rule that pleading is to be construed most strongly against the pleader, and taking the plaintiffs at their word, we feel justified in treating the petition as setting up a gift from Mrs. Robinson to Mrs. Jones for the plaintiffs. If by the agreement between Mrs. Robinson and Mrs. Jones the former intended to make a gift of this land to her nephews, the transaction would not lose its character as a gift by reason of the fact that one of the ends that was accomplished by the gift was the termination of the differences between the members of her family. The facts alleged in the peti-

tion do not make a valid gift of this land. To constitute a valid gift there must be an intention to give by the donor, acceptance by the donee, and delivery of the thing given or some act accepted by the law in lieu thereof. Civil Code (1910), § 4144. To make a gift of land, there must be a conveyance in writing. *Wyche* v. *Greene,* 11 *Ga.* 159 (14); *Cook* v. *Flanders,* 164 *Ga.* 279, 291 (138 S. E. 218); Civil Code (1910), § 4146.

■ But conceding that the transaction is not one of gift, can it be upheld as an agreement to compromise doubtful rights, or as a settlement of family differences and disputes as to their rights in the land involved in this suit, independently of its being a compromise of a doubtful right, such as a court of equity will decree its specific performance? Mrs. Jones was dissatisfied with the conveyances which her father had executed to his son, James W. Power, and to Mrs. Robinson. She complained to her father of the inequality in the disposition of his property thus made. He consented that she could use his name in bringing suit to set aside these conveyances. Mrs. Jones was in the act of employing counsel to institute such suit. Mrs. Robinson suggested to Mrs. Jones that she would give the tract of land in dispute to Mrs. Jones for her children, reserving to herself a life-estate therein, in order to prevent this family litigation. Mrs. Jones accepted the suggestion. Thereupon Mrs. Robinson by parol gave this land to the plaintiffs, reserving a life-estate therein to herself; and in consequence of this gift Mrs. Jones abandoned her purpose of bringing suit in the name of her father to set aside the deeds which he had made to his son and daughter. This agreement was one between Mrs. Robinson and Mrs. Jones. It was not an agreement between Mrs. Robinson and her father. It is alleged in the petition that the father and husband of Mrs. Robinson assented to this agreement. This did not amount to the making by the father of the agreement between Mrs. Robinson and her father. It is one thing to assent to an agreement made by others. It is another thing to make such agreement. The parties to the contract sought to be enforced by specific performance are Mrs. Robinson and Mrs. Jones. Mrs. Jones had no present right or interest in this land, title to which Mrs. Robinson had obtained from her father. She had a mere expectancy therein as heir presumptive of her father. She did not give up or surrender to Mrs.

Robinson any title or bona fide claim which she had in this land, as a consideration for the execution of this agreement. To constitute a compromise of a doubtful right the party asserting such right must have had the right asserted, or must at least believe that she had such right. Mrs. Jones could not have claimed in good faith any title or interest in this land in the lifetime of her father; and it follows that the surrender by her of such title or claim did not furnish a valuable consideration for an agreement compromising a doubtful right. No child has such title to, or interest in, the land of his father, during the lifetime of the father, as he can convey or surrender to another child as a consideration for the relinquishment by the latter of his title to such land which he had previously obtained from their father, upon the theory that such conveyance or relinquishment was a compromise of a doubtful right of the child in whose favor such relinquishment was made. If this alleged agreement can not be enforced as a compromise of a doubtful right of Mrs. Jones to this land, can it be upheld and enforced as one between her and Mrs. Robinson as a settlement of family differences and disputes?

It is established by the decisions of this court that an agreement to settle a family controversy will not be considered voluntary and without consideration, but will be enforced in equity as a fair family arrangement independent of its being a compromise of doubtful rights. *Watkins* v. *Watkins,* 24 *Ga.* 402; *Fulton* v. *Smith,* 27 *Ga.* 413; *Smith* v. *Smith,* 36 *Ga.* 184 (91 Am. D. 761); *Belt* v. *Lazenby,* 126 *Ga.* 767 (56 S. E. 81); *Preston* v. *Ham,* 156 *Ga.* 223, 233 (119 S. E. 658). It is likewise true that to render valid such compromise agreements it is not essential that the matter should be in real doubt; but it is sufficient if the parties should consider it so far doubtful as to make it the subject of compromise, if the party setting up the agreement of settlement believed in the claims or contentions which she asserted, or made such claims or contentions in good faith. *Belt* v. *Lazenby,* and *Preston* v. *Ham,* supra. It is generally recognized that to make a compromise or settlement of a claim sufficient to constitute a consideration of such compromise or settlement, the claim must not be wholly without foundation. Moreover there must be some right or some show of right relinquished, in order

to support an agreement to compromise; and if no right whatever exists, there can be no such relinquishment as is deemed necessary in the law as a consideration for the compromise. 5 R. C. L. 81, § 6, notes 1, 4, and cit. As we have seen, Mrs. Jones at the time this alleged settlement was made had no claim of right or title to or interest in this land. As an heir presumptive of her father she had a mere expectancy. She had no right, title, or interest in this land which she could relinquish to Mrs. Robinson in consideration of the gift by the latter of an estate in remainder in this land to Mrs. Jones for the plaintiffs. In the cases in which this court has dealt with this question, the claims of the parties seeking to enforce family settlements were not wholly without foundation; and there was some right or some show of right relinquished by such parties in order to support the agreement of compromise or settlement. In this case no such right existed in favor of Mrs. Jones or her children, and in consequence there was no such relinquishment by her or her children as can be deemed sufficient and necessary in the law as a foundation for the settlement. At most the agreement was a voluntary one, specific performance of which will not be decreed in equity. Civil Code (1910), § 4636.

■ By an amendment the plaintiffs seek to have title to this tract of land decreed to be in them and to recover possession thereof under a contract between Mrs. Robinson and Samuel W. Power, deceased. The allegations upon which they seek this relief are fully set out above. The defendant demurred to this amendment, upon the ground that there was nothing in the original petition to amend by. Having held that the original petition set forth no cause of action, this objection was well taken. Where a petition as originally drafted failed to set out a cause of action, and a proffered amendment thereto, if allowed, would not have cured its fatal defects, it was not error to reject the offered amendment and to dismiss the case on general demurrer. There must be enough in the original petition to amend by; and where it sets forth no cause of action it can not be amended. Civil Code (1910) § 5681; *Newton* v. *Bowen,* 146 *Ga.* 524 (91 S. E. 684). Furthermore, the plaintiffs in the original petition undertook to recover under an agreement between Mrs. Robinson and Mrs. Jones. In their amendment they undertook to recover upon an

agreement between Mrs. Robinson and Samuel W. Power. They thus made a new and different case from that made in the original petition; and for that reason the amendment was properly dismissed upon demurrer. *Jenkins* v. *Lane,* 154 *Ga.* 454 (1, *d*) (115 S. E. 126).

Furthermore, this amendment undertook to set up in effect a parol gift of this land by the grandfather to the plaintiffs. The plaintiffs allege that the grandfather was threatening to bring suit against his daughter, Mrs. Robinson, to set aside his deed to her to this land, upon the ground that it was obtained from him when he was over 80 years of age and when his mind was impaired by weakness and senility, and when he was wrongfully, deceitfully, and fraudulently induced by his son and son-in-law to execute this deed to Mrs. Robinson; and that in order to prevent such litigation between her and her father, Mrs. Robinson suggested that she would give back and did give back this land to her father for the benefit of the plaintiffs. There was no consideration moving from the plaintiffs or their mother to Mrs. Robinson to induce her to give back this land to the grandfather for the plaintiffs. The consideration which moved Mrs. Robinson to surrender this land to her father was to settle this controversy between him and her, and to keep the suit from being brought by him against her for the purpose of setting aside this deed on his claim that it was wrongfully, deceitfully, and fraudulently obtained by her husband for her, although she did not in any way participate in any such wrong, deceit, or fraud. When the consideration of this gift flowed from the grandfather and not from the plaintiffs, the transaction was in effect a gift of the grandfather to these plaintiffs. The transaction being a gift of this land by the daughter to the father, the same being made for the purpose aforesaid, and in effect a gift of this land by the father to the plaintiffs, who were his grandchildren, the parol gift of this land from the grandfather to the plaintiffs was ineffective to pass any title to them. Furthermore, the effort was to create an express trust by which the grandfather was to hold this land in trust for the plaintiffs, and such a trust can not be proved by parol. It must be created by writing. Civil Code (1910), § 3733; *Jenkins* v. *Lane,* 154 *Ga.* 454 (3, *a*) (supra).

General allegations of fraud, deceit, and undue influence are

insufficient to raise any issues; and they are never sufficiently pleaded except by a statement of the facts upon which they are based. If fraud is relied on to vitiate an act, the particular facts constituting the fraud must be stated, and a general charge of fraud may be assailed by general demurrer. *Napier* v. *Central Georgia Bank*, 68 *Ga.* 637; *Ga. R. Co.* v. *Kent*, 92 *Ga.* 782 (19 S. E. 720); *James* v. *Kelley*, 107 *Ga.* 446 (33 S. E. 425, 73 Am. St. R. 135); *Parrott* v. *Smith*, 135 *Ga.* 329 (69 S. E. 552); *Field* v. *Brantley*, 139 *Ga.* 437 (77 S. E. 559); *Hickman* v. *Cornwell*, 145 *Ga.* 368 (89 S. E. 330).

■ Applying the principles above ruled, the court did not err in sustaining the demurrers and in dismissing the action.

*Judgment affirmed. All the Justices concur.*